O'BRIEN, Administrator, Appellant, vs. WISCONSIN CENTRAL RAILWAY COMPANY, Respondent.

*March 27—September 8, 1903.*

*Railroads: Killing of child at street crossing: Negligence: Lookout on engine: Unlawful speed: Proximate cause: Contributory negligence: Court and jury.*

1. In an action against a railway company for the killing of a child at a street crossing, where it appeared, among other things, that the engineer was on the lookout on his side of the train all the time as it approached the crossing, but by reason of a curve could not see the other side of the track whence the child was coming, the mere fact that just before reaching that street the fireman, in performing his duties, got into a position where he could not look ahead, cannot be regarded as negligence.

2. Secs. 1809, 1809a, Stats. 1898, construed together, make it unlawful to run trains faster than six miles an hour over street crossings in a city, except where gates are maintained as provided in the latter section.

3. Whether, in this case, the unlawful speed of a train was the
proximate cause of the killing of a child at a street crossing,
is *held* to have been a question for the jury.

4. A child twenty-five months old is not chargeable with contribu-
tory negligence.

5. Plaintiff's child, twenty-five months old, left him while he was
splitting wood back of his house, went out through the front
gate upon the sidewalk, thence a short distance across defend-
ant's railway track, and then started to return. Plaintiff
missed the child, looked for him in front of the house, and
saw him coming back on the sidewalk toward the track. He
started on the run, but before he could reach the track defend-
ant's train ran over and killed the child. *Held*, that the ques-
tion of the parents' contributory negligence was one for the
jury.

APPEAL from a judgment of the circuit court for Ashland
county: JOHN K. PARISH, Circuit Judge. *Reversed.*

This action is to recover damages for the alleged negligent
killing of the plaintiff's infant son June 18, 1901, at a street
crossing in the city of Ashland. Issue being joined and trial
had, the court at the close of the testimony directed a verdict
in favor of the defendant, and from the judgment entered
thereon the plaintiff brings this appeal.

The negligence alleged is the excessive speed of the train
and the failure to keep a lookout in the direction in which
the train was going at the time. It appears, and is undis-
puted, that the defendant's passenger depot is within the city
limits; that the defendant's line of railway from that city to
Chicago at first runs directly east for seven blocks to Sixth
Avenue East; that just before crossing that avenue it begins
to turn to the southeast, and continues to do so until after
crossing Seventh Avenue East; that on the evening in ques-
tion the defendant's regular passenger train for Chicago left
the depot at 7:25 p. m., and when it reached Seventh Avenue
East it ran over the child and injured it so that it died the
next morning. There is evidence tending to prove that the
plaintiff was a laboring man, thirty-nine years of age; that
he lived with his family, consisting of his wife and three

children, on the west side of Seventh Avenue East, and in the second house immediately south of the railway track; that he came home from his work at half past six o'clock; that after he had his supper, he went back of the house to an alley, 150 feet from his front gate, to prepare some wood, and little Johnny, then twenty-five months of age, went with him; that while the plaintiff was engaged in splitting wood Johnny left his father and went to the front of the house, through the front gate, out upon the avenue sidewalk, thence north on the sidewalk across the defendant's railway track to a point some distance north of the track, when he turned around and went back south along the same sidewalk, and that as he was attempting to cross the railway track he was struck by the train and so injured that he died the next morning; that when the plaintiff was in the act of carrying an armful of wood into the kitchen, he missed the child, and so dropped his wood, and looked in front, and saw the child, then twenty to twenty-five feet north of the track, running along the sidewalk toward the track, and he immediately started on the run for the child with all his speed, but the train got to the child first; that when he first discovered the child, he was 140 feet from him on the line he went, and that the train at that instant was 225 feet from the child. It is practically undisputed that the engineer kept a lookout on his side of the train all the time as it approached Seventh Avenue East, and could see the track and south of it, but could not see north of the track by reason of the curve in the track; that just before reaching Sixth Avenue East, the fireman, whose place was on the north side of the cab, got down on the deck, and pulled the door open, and reached over with his left hand for the injector, to keep the engine from blowing off, and so could not see the track as the train approached Seventh Avenue East; that the roundhouse foreman, who happened to be riding in the cab to his place of business, about a mile from the depot, when the engine was about at

the alley mentioned looked through the front cab door, and
saw the little child thirty to thirty-five feet north of the cen-
ter of the track, walking north on the sidewalk, away from.
the track; that he then turned around to speak to the en-
gineer, who failed to hear him, when he again looked ahead
and saw the child, then about fifteen or twenty feet from the
track, running toward it; that he immediately called to the
engineer, who turned his head in through the window, set
the brake, and reversed the engine just as soon as he possibly
could, and the train was stopped as soon as possible; that
the automatic air bell was ringing all the time.

For the appellant there was a brief by *Dufur & Alvord,*
and oral argument by *J. F. Dufur.*

For the respondent there was a brief by *Howard Morris*
and *T. H. Gill,* and oral argument by *Mr. Gill.*

CASSODAY, C. J. We cannot say that there was any error
in refusing to submit to the jury the question whether the
defendant was negligent in failing to keep a lookout in the
direction in which the train was going at the time. The facts
are given in the foregoing statement. The engineer was on
the lookout on his side of the train all the time as they ap-
proached Seventh avenue. The mere fact that the fireman,
in pursuance of the requirements of his duties, just before
reaching that avenue, got down on the deck, where he could
not look ahead, cannot be regarded as negligence, under the
circumstances stated.

2. But there is evidence tending to prove that the train
was at the time going at the rate of more than six miles per
hour. The statute declares, in effect, that "no train or loco-
motive shall go faster" in any city or village "than at the
rate of six miles per hour," until it has "passed all the trav-
eled streets thereof." Sec. 1809, Stats. 1898. But counsel
for the defendant contend that the next section of the statute
makes an exception to the general rule, and permits a speed
of fifteen miles an hour, and only requires gates to "be placed

and maintained upon such street crossings" when directed by the city or village authorities (sec. 1809a, Stats. 1898); in other words, that the statute authorized a speed of fifteen miles an hour without gates, but simply required railway companies to construct gates when directed to do so by the city or village. In support of such contention, counsel seem to rely upon *Nolan v. M., L. S. & W. R. Co.* 91 Wis. 16, 22, 23, 64 N. W. 319. It was there held that the statute had no application to unincorporated villages, but it was there said, in effect, by our late Brother Pinney, that the two statutes must be construed together; that the act from which the last section was taken is entitled "An act to *limit the rate of speed* of railroad trains and locomotives in incorporated villages and cities" (ch. 467, Laws of 1891); that railway corporations were thereby relieved from slowing down all trains in cities and villages to six miles an hour, "on condition that some adequate security should be afforded in the case of an increased rate of speed to fifteen miles an hour, and to that end it was provided," among other things, in the language of the statute, "that gates shall *first* be placed and maintained upon such street crossings within cities and incorporated villages over which trains shall pass, as the public authorities of any such city or village may direct." Certainly, the opinion of Mr. Justice Pinney does not bear the construction placed upon it by counsel. But it is unnecessary to discuss the question as to the meaning of the sections of the statutes cited, since it is fully covered by the opinion of Mr. Justice Dodge in the recent case of *Schroeder v. W. C. R. Co.* 117 Wis. 33, 44, 45, 93 N. W. 837, 840, 841. It was there expressly "held that the two statutes should be construed together, and required a railroad passing through an incorporated city to operate its trains over street crossings at not to exceed six miles per hour where no gates had been erected as authorized by the latter section." The evidence was certainly sufficient to take the case to the jury on the question whether the train was at the time running at an unlawful rate of speed. For

the purpose of this appeal, we must assume that it was running at an unlawful rate of speed.

3. This being so, we cannot say, as a matter of law, that such unlawful rate of speed was not the proximate cause of the injury and death of the child. Of course, a child of such tender years is not chargeable with contributory negligence. If it is claimed that the parents were, that would, at least, be a question for the jury. *Hoppe v. C., M. & St. P. R. Co.* 61 Wis. 357, 21 N. W. 227; *Hooker v. C., M. & St. P. R. Co.* 76 Wis. 542, 44 N. W. 1085. The liability of a railway train running over pedestrians, and especially children, in cities and villages, is, of course, much greater than in the country. The object of the statutes so limiting the rate of the speed of trains in cities and villages was to prevent such injuries. The question of proximate cause was properly for the jury, under appropriate instructions from the court.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded for a new trial.

SIEBECKER, J., took no part.