## SOUTHERN RY. CO. *v.* LUCY COLTON.*

### (*Knoxville.* September Term, 1917.)

**RAILROADS.   Operation.   Lookout.**

Shannon's Code, section 1574, subsec. 4, provides that every railroad company shall keep the engineer, fireman, cr some other person upon the locomotive always upon a lookout ahead. Plaintiff's decedent was killed by a locomotive on a curve in the railroad track; the engineer, being on the side of the locomotive on the outside of the curve, was unable to see deceased; and the fireman could have seen him, if he had not been engaged in shoveling coal into the fire box. *Held*, that the company was not negligent under the statute in not providing for a lookout, either by the engineer, fireman, or a third person charged with that undivided duty.

Cases cited and approved:   Railroad v. Nowlin, 69 Tenn., 523; Railroad v. Stone, 54 Tenn., 470; Rogers v. Georgia R. R., 100 Ga., 699; L. & N. R. R. v. Creighton, 106 Ky., 42; Howard v. L., N. O. T. Ry. Co., 67 Miss., 247; East Tenn., Va. & Ga. Railroad Co. v. Bayliss, 77 Ala., 429; Railroad v. Wyrick, 99 Tenn, 500.

Cases cited and distinguished:   Railroad v. White, 73 Tenn., 540; Railroad v. Dean, 37 Tenn., 293; O'Brien v. Railroad, 119 Wis., 7.

Code cited and construed:   Sec. 1574, subsec. 4 (S.).

---

### FROM SULLIVAN.

---

Appeal from the Law Court of Sullivan County to the Court of Civil Appeals, and by *certiorari* to the

---

*As to duty of railroad company to keep lookout for persons on track, generally, see notes in 25 L. R. A., 289; 8 L. R. A. (N. S.), 1069, 41 L. R. A. (N. S.), 264.

On duty of employee of railroad in charge of engine to keep a lookout, as affected by other duties, see note in 21 L. R. A. (N. S.), 723.

Court of Civil Appeals from th^ Supreme Court.—
DANA HARMON, Judge.

HARR & BURROW, for appellants.

ST. JOHN & GORE and ASHWORTH & HOCKETT, for ap-
pellee.

MR. CHIEF JUSTICE NEIL delivered the opinion of the
Court.

This was an action of damages brought by defend-
ant in error against the plaintiff in error for the kill-
ing of her husband by an engine drawing a train of
cars along the line of the road.  There was a ver-
dict in favor of the plaintiff below, and on this a judg-
ment was rendered for $750.  On appeal to the court
of civil appeals the judgment was affirmed.  The case
was then brought here by the writ of *certiorari.*

The facts are these: The engineer was at his right-
ful place on the engine, and on the lookout ahead, as
required by our statutes.  The fireman was, at the time
the accident occurred, engaged in the performance of
his duty of replenishing the fire in the engine.  The
party injured was not visible to the engineer, although
he was on the track, because the train was rounding a
curve and the engineer was on the outside of the curve.
If the fireman had been in his usual place on the left-
hand side of the engine, which was, as the road ran at
that place, on the inside of the curve, he could have
seen the man; but, as stated, he was busy, in the per-
formance of his duty of replenishing the fire of the en-

gine. The court of civil appeals held that, if the fire-
man could not look out on the left-hand side of the
engine, it was the duty of the engineer to occupy that
place, since he could not see the track from his own
place because of the curve; or, if this could not be
done (that is, if the engineer could not leave his place),
it was the duty of the railroad company to have some
other person on the engine in addition to the engineer
and fireman, who could at all times see the whole
road; that is, changing his position from side to side
to accommodate his vision to the curves of the road.
This is not the exact language used in the opinion of
the court, but it is the substance and effect of its hold-
ing. That court refers to *Railroad* v. *White,* 5 Lea
(73 Tenn.), 540, and *Railroad* v. *Nowlin,* 1 Lea (69
Tenn.), 523 for support of the proposition. These cases
are not subject to that meaning when carefully examin-
ed. In *Railroad* v. *White,* both the engineer and fire-
man were on the lookout, and the man on the track
could have been seen by the fireman, who was on the
inside of the curve, if he had watched the track with
sufficient diligence, but through his failure in this re-
gard he did not see the man until it was too late to
warn the engineer; hence the injury. The language
of the court must be considered as applied to these
facts. In the Nowlin Case the facts are not stated very
fully. It was stated, however, that at the time of the
collision the engineer was on the lookout, but, owing
to the particular surroundings, could not see ahead
from his side, "although," as the opinion proceeds,

"some one on the other side of the engine could have seen Nowlin in time to have prevented the accident." On this state of facts it was insisted, by the railroad company, that inasmuch as the engineer was on the lookout from his side the law was fully complied with. The court, commenting on these facts and this contention, said:

"We do not so understand the law. The statutes evidently mean that some person shall be so situated, on the lookout, that he can see ahead. If the engineer cannot see, the fireman must; if the fireman cannot, the engineer must."

It is not stated, in the opinion, that the fireman was engaged in the performance of any other necessary duty. So the case is authority, as to this matter, only on the point that, where both the engineer and the fireman are sufficiently disengaged from other necessary duties that both can be on the lookout, they must so accommodate their vision to the curves of the road as that one or the other must be able to keep the whole track in view; if the engineer cannot see the track, because he is on the outside of the curve, the fireman, on the inside of the curve, must watch, and *vice versa*. It would not do to hold, as we think, that either of these men who work the engine must leave a necessary duty in order to compass this double lookout. The engine must have coal or it cannot run, and the fireman must supply this coal. The engineer must be where he can put his hand on the throttle, the brake, the bell cord, and the lever of the whistle, because he may have

to use them at any moment. It could not be expected of him that he should leave his place of control of the movements of the engine, and step to the other side, and leave the engine without guidance or restraint. It could not be expected that the fireman should abandon his necessary duty of furnishing motive power. The only other alternative would be the furnishing of a third man, but this necessity has been held not to exist. In *Railroad* v. *Dean,* 5 Sneed (37 Tenn.), 293, the original act was under construction. That act read:

"That all railroad companies in this state shall be required to keep some one upon the locomotive always on the lookout ahead."

This was held to mean, in the case referred to, that the companies were "required by law to have a special agent always on the lookout ahead, and performing that undivided duty." The original act was amended in 1857-58 (chapter 44, section 3), so as to read, as carried into the Code:

"Every railroad company shall keep the engineer, fireman, or some other person upon the locomotive, always upon the lookout ahead." Shan. Code section 1574, subsec. 4.

See *Railroad* v. *Stone,* 7 Heisk. (54 Tenn.), 470.

The difference in the two acts is plain. The change was intended to dispense with the necessity of keeping a special agent always on the lookout ahead, and performing that undivided duty.

The same question has been decided in other states as we are now deciding it. In *Rogers* v. *Georgia R. R.,*

100 Ga., 699, 28 S. E., 457, 62 Am. St. Rep., 351, it was held that, where the animal that was injured could not be seen by the engineer, the fact that the fireman was coaling the engine, and the company did not provide a third person to keep a lookout, did not constitute negligence. In Kentucky the court held that, while it was negligence for the engineer momentarily to withdraw his attention from the track while passing along a city street, it was not negligence for the fireman to be engaged in putting coal into the engine, although the child injured could be seen only from the fireman's side. *L. & N. R. R.* v. *Creighton,* 106 Ky., 42, 50 S. W., 227. In a case where it appeared that a child was killed at a crossing where it could not be seen by the engineer, but might have been seen by the fireman, the supreme court of Wisconsin held that it was not negligence for the fireman to descend from his seat, in the performance of other duties, to a point where he could not look ahead. *O'Brien* v. *R. R.,* 119 Wis., 7, 10, 96 N. W., 424, 425. In that case the court said:

"We cannot say that there was any error in refusing to submit to the jury the question whether the defendant was negligent in failing to keep a lookout in the direction the train was going at the time. . . . The engineer was on the lookout on his side of the train all the time as [the train] approached Seventh avenue. The mere fact that the fireman, in pursuance of the requirements of his duties, just before reaching that avenue, got down on the deck, where he could not look ahead, cannot be regarded as neglience, under the circumstances stated."

138 Tenn.—20

To the same effect, see *Howard* v. *Louisville, New Orleans & Texas Ry. Co.,* 67 Miss., 247, 7 South., 216, 19 Am. St. Rep., 302; *East Tenn., Va. & Ga. Railroad Co.* v. *Bayliss,* 77 Ala., 429, 54 Am. Rep., 69, 71.

It is difficult to make any train service, or any other service in any business, absolutely perfect. The legislature was within the due exercise of its powers when it took into consideration the enormous expense that would be required to furnish a third man on every engine, and refused to impose this burden in order to safeguard the occasional reckless trespasser who might be walking, or lying, on one side or the other of a curve of a railway track, or an animal that its master had permitted to stray. The possibility of such occasional danger to a trespassing man, or to a wandering animal, or to persons or goods on a train, from collision therewith, was not deemed sufficiently imminent to require the imposition of the additional expense referred to. If we should so hold we should, as we believe be running counter to the declared legislative policy, which in 1857-58 dictated the change in the previously existing statute. Our present holding is fully in accord with that in *Railroad* v. *Wyrick,* 99 Tenn. (15 Pick.), 500, 505, 42 S· W., 434.

It results that the trial judge committed error in refusing to sustain plaintiff in error's motion for peremptory instructions, and the court of civil appeals committed error in refusing to reverse the judgment of the trial court. Both judgments are now reversed, the motion for peremptory instructions is sustained, and the suit dismissed, at defendant in error's cost.