BEACH, Appellant, vs. GEHL, Respondent.

*March 11—April 7, 1931.*

For the appellant there was a brief by *Thomas E. Torphy* of Milwaukee, attorney, and *O'Meara & O'Meara* of West Bend of counsel, and oral argument by *Mr. Torphy*.

For the respondent the cause was submitted on the brief of *Sawyer & Gehl* of Hartford.

FRITZ, J. It is undisputed that in the state of Illinois the parties entered into a written lease for a five-year term, commencing May 1, 1921, of premises located in that state; that as rental the defendants were to pay $416.67 per month, and certain fire insurance premiums and all taxes and assessments levied against the premises during the leased term; that in addition thereto they were to deposit with the plaintiff $100 per month, until $2,500 were so deposited, "as security for the payment of the last six months' rental;" that the lessees vacated the premises in December, 1922, after occupying them for twenty months, during which they deposited $1,600 and paid all of the rents and charges which accrued, excepting the rents for the last four months, $282.52 for accrued insurance premiums, and $1,635.11 for taxes levied during the 1922 calendar year, and paid by plaintiff on May 1, 1923.

Plaintiff contends that in December, 1922, the defendants abandoned the premises and failed to pay the rent as required by the lease; that plaintiff thereupon, and in accordance with

the lease, re-entered and relet the premises so as to reduce the damages occasioned by defendants' failure to pay the stipulated rent; and that after crediting defendants with all amounts received in reduction of their obligations, they are still indebted to plaintiff in excess of $12,000. On the other hand, the defendant Gehl contended that by an oral agreement made between the plaintiff and Gehl's agent the lease was canceled and surrendered, and that pursuant thereto plaintiff accepted the key to the premises on December 9, 1922. There was a decided conflict in the evidence on the question of whether plaintiff ever made such an oral agreement, and that presented an issue for the jury, which the court rightly submitted in a special verdict by the following question: "Did the plaintiff, Elmer E. Beach, agree with Leo P. O'Reilly, acting on behalf of John P. Gehl, to cancel the lease?" The jury answered that question "Yes," and there would be no occasion for disturbing its finding in the absence of error in the instructions.

The court rightly concluded that under the law of Illinois, which controls because the premises as well as the transactions were in that state, an oral agreement to abrogate, cancel, and surrender a lease for a term of years is valid, and that such agreement may be established by parol evidence.

In *Alschuler v. Schiff,* 164 Ill. 298, 45 N. E. 424, 425, the court said:

"A distinction . . . must be drawn between contracts of this character, which are relied on as being in force with some provision alleged to have been changed by oral agreement, and those which, it is insisted in defense, have been absolutely abrogated and surrendered by parol agreement of the parties thereto. . . . We know of no good reason why he may not also show, by parol proof, that, by agreement between the landlord and himself, he has been released from the terms and obligations of the lease, and has in pursuance thereof surrendered possession of the prem-

ises to the landlord. . . . We hold it to be the law of this state that, where it is not sought to alter or change the terms of a contract under seal, still leaving it in force, but where the object is to show that such instrument has been abrogated, canceled, and surrendered, the question is one of fact for a jury and evidence thereon is admissible."

See, also, *Brettman v. Fischer,* 216 Ill. 142, 74 N. E. 777, 779; *Yockey v. Marion,* 269 Ill. 342, 110 N. E. 34, 37.

However, in submitting that issue to the jury, the court, after carefully and properly instructing the jury as to what was necessary to establish that there was a meeting of the minds of the parties, and as to what would constitute a valid agreement to abrogate the lease, instructed as follows:

"If you find from the evidence that after the defendant had vacated the premises and had caused the key to be turned over to the plaintiff, the plaintiff re-rented the premises on his own account, and under such circumstances that it is fair and reasonable to assume that he did not then intend to look to the defendants for future rents or any part thereof, then you should answer the question submitted to you 'Yes.' "

"If such re-renting by the plaintiff was done on his own account instead of for and on account of the tenants, then the plaintiff thereby elected to terminate the lease and the defendant John P. Gehl is not liable for future renting and the question submitted to you should be answered 'Yes.' "

Those instructions unequivocally required the jury to conclude, in effect, that a binding agreement to cancel the lease had been made in November, if they found that after the defendants vacated the premises and returned the key to plaintiff in December, plaintiff re-rented the premises on his own account under the circumstances stated in the instruction. Finding that the events mentioned in those instructions occurred during or after December did not necessitate an affirmative answer to the question of whether the plaintiff had agreed with O'Reilly to cancel the lease. At best, plaintiff's subsequent acts constituted circumstances

which merely tended to support defendants' contention that an effective agreement to cancel had been concluded in November. No greater effect should have been accorded to those subsequent acts. The errors were prejudicial in this case, in which the evidence on the submitted issue was so conflicting that the jurors were unable to agree until after they had returned for further instructions and the court had repeated all of the instructions. Because of those errors plaintiff is entitled to a new trial. Furthermore, the instruction last quoted was also improper, in so far as the jurors were thereby informed as to the legal effect on Gehl's liability of their finding that plaintiff re-rented on his own account, and their thereupon answering the question "Yes."

"It is reversible error for the trial court, by instruction to the jury, to inform the jury expressly or by necessary implication of the effect of an answer or answers to a question or questions of the special verdict upon the ultimate right of either party litigant to recover or upon the ultimate liability of either party litigant." *Banderob v. Wis. Cent. R. Co.* 133 Wis. 249, 287, 113 N. W. 738.

However, it must be noted that in that case the court also laid down the rule that "the giving to the jury of general rules of law appropriate to the particular question of the special verdict in connection with which such rules are given is not error." See, also, *Miner v. Rolling,* 167 Wis. 213, 167 N. W. 242. Certain portions of the charge which are criticised by appellant's counsel as inappropriate were well within the latter rule, and no error was committed in so instructing the jury as to some of the general rules of law applicable in this case.

If the lease was effectively canceled and surrendered, as found by the jury, then there was no other prejudicial error in the court's rulings, with the exception of the failure to allow plaintiff to recover the sum of $1,635.11 (with interest) which he paid on May 1, 1923, for the taxes levied

against the premises for and during the 1922 calendar year. The defendants had expressly agreed to pay all taxes and assessments levied against the leased premises for and during the periods which constituted the original term of the lease, .and as defendants were in possession during every month of the year 1922 they are liable for the taxes for that year.

On the other hand, the court did not err in applying upon the rental which accrued for the last four months that defendants occupied the premises the $1,600 which had accumulated in plaintiff's hands by reason of the deposits of $100 per month which the defendants made "as security for the payment of the last six months' rental." The lease characterized those deposits as "prepayment to apply as rental upon the last six months of this lease." The last four months of 1922, during which defendants failed to make any payments, were also the last four months of the lease, if it was effectively canceled as defendant contends, and were consequently part of the last six-months period for which the stipulated, accruing monthly rental was to be discharged by resorting to the accumulated deposits.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.