DeGroot and wife, Respondents, vs. Van Akkeren and others, Appellants.

*April 26—May 25, 1937.*

106

108

For the appellants there was a brief by *Buchen & Federer* of Sheboygan, and oral argument by *G. W. Buchen.*

For the respondents there was a brief by *Werner, Clemens & Fessler* of Sheboygan, and oral argument by *Jacob A. Fessler.*

NELSON, J.   The defendants first contend that the court erred in refusing to direct a verdict in their favor and in refusing to grant their motions to change certain answers of the jury and for judgment in their favor on the verdict as so changed.

In order that these contentions may be understood it will be necessary briefly to summarize the evidence.   On July 6, 1936, the plaintiffs' son, Conway, aged five years eleven months and two days, was fatally injured as a result of his colliding with the right rear wheel of a Chevrolet truck belonging to the partnership and operated at the time by the defendant Ed. Van Akkeren.   Conway was riding on a tricycle belonging to his playmate Bobby Schneidewind.   The accident occurred upon the sidewalk at or near to an alley which runs westerly from South Fifteenth street through the middle of the block.   South Fifteenth street runs north and south.   It is intersected at right angles by Indiana avenue.   At the southeast corner of the intersection of Indiana avenue and South Fifteenth street is a building known as the Rammer Meat Market & Food Store.   It faces to the north but has an entrance on the west side of the building. South Fifteenth street is forty feet wide and paved with concrete.   On the east side of the street, commencing at Indiana avenue, and continuing a distance of about half a block to the south there is no vertical curb.   An apron or rolling curb exists there which connects with the sidewalk.   This

apron is eleven feet wide. The alley mentioned is eighteen feet wide, the entrance to which has rounded curbs. The distance between the curb and the east edge of the sidewalk on the west side of South Fifteenth street is a little over eight feet. The sidewalk is six feet wide. At the southwest corner of the intersection of South Fifteenth street and Indiana avenue and across said street from the Rammer market is a tavern which faces north on Indiana avenue. The yard to the rear of this tavern extends to the alley and is unfenced. At the time of the accident the yard was overgrown with grass about ten inches high. A large plum tree existed in this yard at a point nineteen feet north of the alley and eight feet west of the sidewalk. In the vicinity of this tree a rather dense growth of plum tree sprouts existed. Most of the sprouts were within a radius of six feet from the trunk of the tree but some were eight or nine feet therefrom. At the time of the accident these sprouts were substantially thirty inches high.

The accident occurred at about 11 o'clock in the forenoon. Prior to that time the defendant Ed. Van Akkeren, as the servant of the partnership, had been engaged in delivering meat and meat products to various shops and stores. He came on to South Fifteenth street at the Rammer corner and turned his truck south on South Fifteenth street. He brought it to a stop on the apron opposite the rear end of the Rammer building. It was facing in a southeasterly direction. He delivered two boxes of meat products to the Rammer market, and then started the truck into the rear of the Rammer lot where he turned around preparatory to crossing the street and entering the alley across the street. As he approached the entrance to the alley his truck was headed in a direction a little south of west. He observed an automobile approaching from the north. He stopped the truck near the middle of the street and waited for the auto-

mobile to pass. After the automobile had passed he started the truck forward in the direction of the alley. At that time he observed a small boy sitting on a tricycle which was stopped at a point about ten feet to the north of the alley. He proceeded ahead and drove the truck into the alley. He last observed the boy in that position when the seat of the truck was about at the sidewalk. He went through the alley and made a number of other deliveries, wholly oblivious of any accident. The evidence, however, permits of the inference that the boy, while riding upon the tricycle, came into collision with the right rear wheel of the truck. The only witness who pretended to testify as an eyewitness to the accident was Robert Schneidewind, who was a little past six years of age. His competency as a witness was examined into by the court, who asked him a few simple questions which a much younger child could have answered intelligently. Robert was permitted to testify without being sworn and without being examined at all as to the obligations of an oath or the obligations to tell the truth. On direct examination he testified that he observed the truck while it was parked across the street and as it approached the entrance to the alley, that he saw the back part of the truck hit Conway, and that Conway was riding along the sidewalk toward the alley just before the truck hit him. During his examination which occurred before the noon recess, he testified that he was standing on the sidewalk near the plum tree when he observed the accident. After the noon recess he testified that when the truck was proceeding toward the alley he was sitting under the plum tree, that just before and when Conway got hit he was standing under the plum tree. Robert's testimony is rather replete with inconsistent statements evidencing a proneness on his part to testify quite responsively to the suggestions of the examiner. In view of the disposition which must be made of this appeal, we deem it

unnecessary to review the several inconsistencies which are found in his testimony. As before stated, the jury found that the defendant, Ed. Van Akkeren, did not maintain a proper lookout, and that such negligence was a cause of Conway's injury and death. Those findings are vigorously assailed by the defendants as not supported by the evidence. Assuming that the jury believed the testimony of Ed. Van Akkeren, there would then be no basis for a finding that he failed to maintain a proper lookout. He testified that he did maintain a proper and careful lookout and that he saw a boy on a tricycle stopped ten feet from the alley. He also testified that he observed the boy in that position when the seat of the truck was over the sidewalk. If this testimony were deemed credible there could be no sustainable finding of negligence on his part. However, the boy witness, Robert, testified that just prior to the time that the truck was about to enter the alley Conway was riding his tricycle toward the alley. Assuming that such testimony might be deemed credible by the jury, and assuming that Robert was of sufficient age and intelligence to be a competent witness, then a jury might be warranted in disbelieving the testimony of Ed. Van Akkeren regarding the lookout he maintained. If, just before the accident, Conway was riding along the sidewalk toward the alley, apparently oblivious to the fact that the truck was approaching the alley, a proper lookout would have revealed that Conway was riding toward the alley and cast upon Van Akkeren the duty of exercising ordinary care to avoid colliding with him. As the testimony stands, it is sufficient to sustain the finding of the jury that the defendant, Ed. Van Akkeren, did not maintain a proper lookout.

Defendants next contend that the competency or capacity of Robert, the six-year-old witness, was not properly tested by the trial court before permitting him to testify, that the manner of his testifying and the many discrepancies and

inconsistencies that exist in his testimony clearly show that he was incompetent, and that the defendants' motion to strike the testimony should therefore have been granted.

In *State v. Juneau*, 88 Wis. 180, 182, 59 N. W. 580, it was said:

"It seems to be the settled law that, after four years of age, a child is not incompetent to testify as a witness by reason of any rule of law which excludes him. Whether a child above that age is competent to testify depends upon his intelligence, which is to be determined by the trial court by examination of the child in court."

That holding was apparently based upon certain authorities cited, from which quotations were made, to wit:

. " 'It may be regarded as well settled that whenever there is intelligence enough to observe and to narrate, there a child (a due sense of the obligation of an oath being shown) can be admitted to testify.' 1 Whart. Ev. (3d ed.) § 398. 'Age, at least after four years are past, does not touch competency; and the question is one of intelligence, which, whenever a doubt arises, the court will determine to its own satisfaction by examining the infant on his knowledge of the obligations of an oath and the religious and secular penalties for perjury.' *Id.* § 399."

That rule was substantially approved in *Barnard v. State*, 88 Wis. 656, 60 N. W. 1058, and *Van Salvellergh v. Green Bay Traction Co.* 132 Wis. 166, 111 N. W. 1120. The true test of a child's competency to testify is stated in 28 R. C. L. p. 461, § 48, thus:

"It is the approved doctrine of modern decisions that the test of an infant's competency to testify is his ability to receive accurate impressions of the facts to which his testimony relates and to relate truly the impressions received. If he has this understanding and intelligence and appreciates the obligation to speak the truth, he is competent: otherwise, he is not."

In 1 Wigmore, Evidence (2d ed.), pp. 922, 923, §§ 505, 506, it is stated:

"But this much may be taken as settled, that no rule defines *any particular age* as conclusive of incapacity; in each instance the capacity of the particular child is to be investigated. . . . The capacity of *observation* (*ante,* § 478) is, the first of the essential requirements, and has been occasionally so noted by the courts. (2) The capacity of *recollection* is also an essential requirement; though little likely to be called into question, and probably often intended to be covered by the expressions defining the next requirement. (3) For the capacity of *communication,* as in the case of mental derangement (*ante,* § 495), there are two elements to be taken into consideration: (a) There must be a capacity to *understand* questions put, and to frame and express intelligent answers. (b) There must be a sense of *moral responsibility,*—a consciousness of the duty to speak the truth."

In *Commonwealth v. Tatisos,* 238 Mass. 322, 325, 130 N. E. 495, 498, that court stated the applicable rule thus:

"The ultimate test cannot be the amount of moral training and religious understanding, but must depend upon the existence of understanding sufficient to comprehend the difference between truth and falsehood, the wickedness of the latter and the obligation and duty to tell the truth, and, in a general way, belief that failure to perform the obligation will result in punishment. The child need not and probably will not understand this in all its fulness; it is unnecessary for her to do so."

Sec. 325.30, Stats., provides:

"*Capacity of infants, etc.* The court may examine a person produced as a witness to ascertain his capacity and whether he understands the nature and obligations of an oath."

Whether a witness who does not understand the nature and obligation of an oath, but who does understand the difference between truth and falsehood and the wickedness

or wrongfulness of telling anything but the truth, may be considered competent in view of our statute, may be somewhat doubtful. We think, however, in view of the long practice that seems to have prevailed among the trial courts of this state, a child who has sufficient mental capacity, in the opinion of the trial court, and who comprehends the difference between truth and falsehood and who solemnly promises to tell the truth, may be permitted to testify without being formally sworn. In the present case no attempt was made by the trial court to test Robert's understanding as to the difference between truth and falsehood, the wickedness of the latter and the obligation or moral duty to tell the truth. Had the court properly proceeded, Robert's testimony might have been no different. However, we are now concerned with the proper rule or practice which it is important to correctly state. The court not having properly tested Robert's mental and moral capacity for the purpose of determining his competency to testify, and his testimony revealing a number of rather gross inconsistencies, we are of the opinion that the court erred in not striking his testimony. Had the court conducted a sufficient examination into the mental and moral capacity of Robert, mere discrepancies in his testimony would not be a proper reason for striking his testimony. The question as to which part of his testimony was credible would have been for the jury. *Barnard v. State, supra; Van Salvellergh v. Green Bay Traction Co., supra; Stewart v. Olson,* 188 Wis. 487, 206 N. W. 909.

The failure of the trial court, under the circumstances of this case, to strike the testimony of Robert Schneidewind, was, in our opinion, error which requires the reversal of the judgment and the granting of a new trial.

The defendants further contend that the trial court erred to their prejudice in instructing the jury. The court, in in-

structing the jury regarding the questions which required the jury to compare the negligence of the driver of the truck with that of the deceased Conway, read sec. 331.045, Stats., to the jury. It said:

"I will read to you at this time, sec. 331.045 of the statutes, that section is entitled 'Comparative Negligence.' 'Contributory negligence shall not bar recovery in any action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property if such negligence was not as great as the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished by the jury in the proportion to the amount of negligence attributable to the person recovering.' "

This instruction is assailed as erroneous because it informed the jury as to the effect of their answers. It has been repeatedly held that a jury should not be instructed as to the effect of their answers, and such erroneous instructions generally have been considered prejudicial. *Banderob v. Wisconsin Cent. R. Co.* 133 Wis. 249, 287, 113 N. W. 738; *Swiergul v. Suamico,* 204 Wis. 114, 235 N. W. 548; *Beach v. Gehl,* 204 Wis. 367, 371, 235 N. W. 778.

Whether, in this action, the instruction would be considered prejudicial, we do not decide. We do, however, admonish the court upon a retrial of the action to avoid telling the jury the effect of their answers by reading the comparative-negligence statute to them.

The plaintiffs duly served a motion for a review of the court's order sustaining the answers of the jury which found that Conway, at the time of the accident, was guilty of contributory negligence. The plaintiffs contend that a child of the age of approximately six years should be conclusively presumed to be incapable of negligence contributing to his injury, so the question for determination on plaintiffs' motion for review is simply this: Can a child five years eleven

months and two days of age be guilty of contributory negligence?

As to whether a child about six years of age may be found guilty of contributory negligence by the jury as a matter of fact, there is much contrariety of judicial opinion. See extensive notes in L. R. A. 1917 F, commencing at page 10, particularly at page 60, and 107 A. L. R. commencing at page 4, particularly at page 114, where it is stated:

"The majority view apparently is that there is a presumption, either conclusive or rebuttable, in the case of injury to or death of a six-year-old child, that it did not have the capacity necessary to charge it with contributory negligence. However, there is a wide difference of opinion as to whether the presumption is conclusive or rebuttable."

Many cases hold that a child of that age is conclusively presumed incapable of contributory negligence, while apparently an equal number of cases hold that a child of that age may be capable, under certain circumstances, of contributory negligence. In our own holdings there is confessedly some confusion. While it has been held that a very young child is incapable of contributory negligence, *Schmidt v. Milwaukee & St. P. R. Co.* 23 Wis. 186, *O'Brien v. Wisconsin Central R. Co.* 119 Wis. 7, 96 N. W. 424, it has been held that older children may be found guilty of contributory negligence by a jury. In *Schmidt v. Riess,* 186 Wis. 574, 580, 203 N. W. 362, an action involving the injury to a child, who was a few months less than seven years of age, and who suddenly took a notion to run across a street and was struck by a passing automobile, it was said:

"There are comparatively few cases in the books where juries have found a child of this age, and under similar circumstances, guilty of contributory negligence. In a few of the states an arbitrary rule has been adopted, where a child less than seven years of age is deemed incapable of being guilty of contributory negligence. Such rule, how-

ever, is not in accordance with the weight of authority, and in most of the states the question is one for a jury to pass upon. . . . In this state, with a child of plaintiff's age, the question of contributory negligence is submitted to a jury under proper instructions."

But in *Ruka v. Zierer*, 195 Wis. 285, 293, 294, 218 N. W. 358, it was held that the facts of that case "should be sufficient to exonerate the boy of all negligence." The court said:

"While it is held in a few jurisdictions that a child of that age is capable of contributory negligence, the overwhelming weight of authority is to the effect that a child of that age is conclusively presumed to be incapable of contributory negligence. See note in L. R. A. 1917 F, on p. 57. This rule meets with our entire approval, especially under the facts and circumstances of this case. This court has held that preoccupation in the discharge of duties on the part of adults minimizes the degree of care required in the absence of such diversion or preoccupation. *Hodgson v. Wis. G. & E. Co.* 188 Wis. 341, 206 N. W. 191, and cases there cited. Adults naturally become absorbed in their work. It is just as natural and just as legitimate for children to become absorbed in play. A child of five years who will not become absorbed in play is abnormal. When this boy darted in front of defendant's automobile he was absorbed in play, and, even though he be capable of contributory negligence, the rule above referred to, which as applied to adults minimizes the degree of care required of them, should be sufficient to exonerate the boy of all negligence."

In *Mueller v. O'Leary*, 216 Wis. 585, 588, 257 N. W. 161, it was held that a boy seven years and ten months of age was not properly held guilty of contributory negligence as a matter of law but that that issue should have been submitted to the jury. It was there said:

"In a case involving contributory negligence of a child, the question is whether or not the child under the circumstances exercised that degree of care that is ordinarily exer-

cised by a child of the same age, capacity, discretion, knowledge, and experience, under the same or similar circumstances. . . . It cannot be said that children for their own protection are required to observe any declared degree of care. . . . Whether or not the plaintiff was guilty of contributory negligence is, as already indicated, a question of fact, and it is considered that the case should have been submitted to the jury."

In *Schmidt v. Heim,* 200 Wis. 608, 610, 229 N. W. 33, where a child of five years and seven months of age, while engaged in play with two other children, ran out from a sidewalk and was struck by a passing auto, it was said:

"On account of the age of the child, it is not claimed that he was guilty of negligence contributing to his injury."

It thus appears from our decisions that the particular circumstances of each case are of controlling importance in determining whether a child should be held guiltless of contributory negligence as a matter of law. While a child about six years of age may be injured or killed as a result of some act on his part which, if done by an older child or adult, would amount to contributory negligence as a matter of law, such a child may obviously be held not to have been negligent as a matter of law where the care which he exercised is the care ordinarily exercised by children of the same age, capacity, discretion, knowledge, and experience under the same or similar circumstances. *Goldberg v. Berkowitz,* 173 Wis. 603, 181 N. W. 216.

It is our considerate judgment that the better and more just rule is that which permits a child of the age of about six years to be found guilty of contributory negligence if from the facts and circumstances it is apparent, from his age, capacity, discretion, knowledge, and experience he knew or ought to have known of the dangers involved in a certain act and in the exercise of such ordinary care as he

should have exercised he could have avoided the injury. In this day and age children are repeatedly warned as to the dangers of automobile traffic, and many children are experienced in riding velocipedes, tricycles, bicycles, wagons, and other wheeled toys, and know of the dangers of running into persons or objects on sidewalks or streets and the necessity of maintaining a lookout. In such cases where injury does result we are of the opinion that the recent case of *Eckhardt v. Hanson,* 196 Minn. 270, 264 N. W. 776, 107 A. L. R. 1, states the proper and just rule, page 4:

"Under a proper instruction the Massachusetts rule is the more sound and the one most likely to insure just result. It does not cast upon the general public any and all risks that may be created by the carelessness of a child. Still it does not go so far as to hold a child to a degree of care not commensurate with its age and experience. Under present day circumstances a child of six is permitted to assume many responsibilities. There is much opportunity for him to observe and thus become cognizant of the necessity for exercising some degree of care. Compulsory school attendance, the radio, the movies, and traffic conditions all tend to have this effect. Under the Illinois rule a child may be guilty of the most flagrant violation of duty and still not be precluded from recovering damages for injuries suffered partly because of such violation. The Massachusetts rule contemplates justice for all parties irrespective of age. Jurors, by virtue of their office, are competent to judge whether or not a child has exercised a degree of care commensurate with its age, capacity, and understanding. The Illinois rule has no basis in sound reason or logic. It is based upon an outworn historical rule of criminal law which refused to acknowledge any capacity on the part of any child under seven years of age to distinguish between right and wrong."

The so-called Illinois rule is that a child under seven is incapable of contributory negligence. The so-called Massachusetts rule is that a child under seven may be found

guilty of contributory negligence by a jury. Under the facts and circumstances of this case we are of the opinion that the trial court was right in submitting to the jury the question of Conway's contributory negligence, and was right in not disturbing the answers of the jury in that regard. The plaintiffs' motion for review is therefore denied.

*By the Court.*——Judgment reversed, and cause remanded with directions to grant a new trial.