Schumacher and another, Respondents, vs. Wolf and another, Appellants.

*October 16—November 20, 1945.*

For the appellants there were briefs by *Dougherty, Arnold & Kivett,* attorneys, and *George A. Gessner* of counsel, all of Milwaukee, and oral argument by *Mr. Gessner.*

For the respondents there was a brief by *Treis & Corrigan,* attorneys, and *Walter D. Corrigan, Sr.,* and *John S. Barry* of counsel, all of Milwaukee, and oral argument by *Walter D. Corrigan, Sr.*

FRITZ, J. The collision involved herein occurred on a dark and very cloudy night. The defendant Wolf's tractor-trailer truck outfit, traveling northwesterly on a concrete roadway twenty-two feet wide with four to seven-feet-wide shoulders on each side, had become disabled and its driver left it standing on the northeasterly side of the highway. There was a conflict in the evidence as to whether the outfit was entirely on the concrete roadway, or whether four feet of its width were on, and four feet thereof off the concrete. The driver properly set up flares to warn travelers. Shortly thereafter the driver of another of Wolf's tractor-trailer truck outfits, which was going southeasterly, noticed the disabled outfit and stopped and left his outfit standing with half of its width on the concrete and half resting on the shoulder on the southwesterly side of the highway. The rear ends of the trailer trucks were on opposite sides of the roadway, but not directly opposite each other; and there is a conflict in the evidence as to whether the space between the ends was twenty to twenty-five feet, or was fifty to one hundred fifty feet, as the defendants claim. There is also a conflict in the evidence as to

whether Wolf's second outfit stood there unlighted, as plaintiff claims, or whether its lights were lit and flares had been set up by its driver. While Wolf's outfits were thus standing on the highway, several other tractor-trailer outfits passed safely along the concrete roadway between the Wolf outfits, prior to the arrival of a southeasterlybound Thibodeaux tractor-trailer truck outfit, which in turn was followed by the plaintiff Schumacher's tractor-trailer truck outfit, operated by his driver, Chester I. Rohrer. He had been following the Thibodeaux outfit at the speed of thirty-two to thirty-five miles per hour, with his tractor's headlights at low beam, which enabled him to see ahead about twenty feet. When the Thibodeaux outfit reached the place of the collision it was about four hundred feet ahead of Rohrer, who, when still about one hundred fifty yards from that place, saw at his left the burning flare lights set up by the driver of the disabled Wolf outfit; and Rohrer then slowed down to eighteen to twenty miles per hour. When he came within a few feet of the disabled outfit, he looked toward it and did not see the Thibodeaux outfit as it was passing the disabled outfit and swung to the left around the second Wolf outfit standing to the rear of the disabled outfit. But, upon Rohrer looking again more directly down the highway, he saw for the first time, within a few feet ahead of his tractor, the second Wolf outfit standing southwest of the disabled outfit. Thereupon Rohrer swung his tractor sharply to the left so that it cleared, but the right front corner of his trailer collided with the left rear corner of the trailer of the second Wolf outfit; and Rohrer's outfit went partly into the ditch on his left side of the road until it stopped about one hundred yards from the place of the impact. The violence of the impact forced the struck Wolf outfit forward about one hundred feet, and into a ditch. While attempting to pass between the Wolf outfits and at the time of the impact, Rohrer's speed was around

eighteen to twenty miles an hour. At that speed he could stop his vehicle within about fifty feet, according to his testimony.

Upon completing the introduction of evidence, at the joint request of the attorneys for all of the parties, the court submitted to the jury for a special verdict certain questions which, together with the answers returned thereto by the jury, read as follows:

"Question 1: Was the defendant, Max Wolf, by and through his servant and employee, the driver of the truck parked on the southwesterly side of the highway, negligent at the time and place in question and under the conditions and circumstances shown by the evidence? Answer: Yes."

"Question 2: If you answer Question 1 'Yes', then answer this question: Was the collision a natural and probable result of want of ordinary care on the part of said truck driver? Answer: Yes."

"Question 3: If you answer Question 1 'Yes,' then answer this question: Ought the said truck driver as a person of ordinary intelligence and prudence reasonably to have foreseen that an accident and damage to another and to the truck operated by him, and its contents, might probably result from such want of ordinary care on his part? Answer: Yes."

"Question 4: Was the plaintiff, Walter H. Schumacher, by and through his servant and employee, the driver of his said truck, negligent at the time and place in question and under the conditions and circumstances shown by the evidence? Answer: No."

"Question 5: If you answer Question 4 'Yes,' then answer this question: Was the collision a natural and probable result of want of ordinary care on the part of said truck driver? Answer:" (No answer.)

"Question 6: If you answer Question 4 'Yes,' then answer this question: Ought the said truck driver as a person of ordinary intelligence and prudence reasonably to have foreseen that an accident and damage to another and to the truck operated by him, and its contents, might probably result from such want of ordinary care on his part? Answer:" (No answer.)

"Question 7: If you find that the defendant, Max Wolf, by and through his servant and employee, the driver of the truck parked on the southwesterly side of the highway, failed to exercise ordinary care contributing to cause the collision, and also find that the plaintiff, Walter H. Schumacher, by and through his servant and employee, the driver of the Schumacher truck, failed to exercise ordinary care contributing to cause the collision, then taking 100% as the basis, what proportion or percentage of the total negligence contributing to cause the collision do you attribute to:

"(a) Max Wolf?                    Answer: 75%
"(b) Walter H. Schumacher?        Answer: 25%
                                          ‾‾‾‾‾
                                          100%"

Upon the jury's answers in the special verdict the plaintiff moved for judgment for his recovery of seventy-five per cent of the damages sustained by him.

On the other hand, defendants contended that, as there is no finding by the jury that plaintiff's driver's negligence with respect to headlights was a proximate cause of the collision, the verdict is insufficient to grant judgment; that, as the court did not instruct the jury that plaintiff's driver's negligence was a cause of the collision, the jury's finding that twenty-five per cent of the total negligence was attributable to that driver is a nullity; and that the court should hold as a matter of law that the negligence of the respective drivers was equal and should grant judgment, notwithstanding the verdict, for the dismissal of the action. The court decided to grant plaintiff's motion for judgment. But in the course of its decision the court stated that,—

"On account of the agreed form of the special verdict it is impossible for either the court or counsel to determine what or how many grounds of causal negligence as charged the jury found against the defendant truck driver. The court instructed the jury that the plaintiff truck driver was guilty of negligence as a matter of law with respect to headlights and the jury absolved the plaintiff truck driver of negligence

in any other respect. Accordingly, it is not only impossible but it would be improper for the court to hold as a matter of law that the respective truck drivers were equally negligent.

"If the verdict is perverse or if the jury through confusion or otherwise have returned a verdict which is insufficient to enable or require the court to grant judgment thereon a new trial must be granted."

Under the evidence and as the court rightly instructed the jury, there were issues to be determined by the jury as to whether plaintiff's truck driver was guilty of negligence with respect to lookout, speed, and management and control; and whether if the jury found he was negligent in any of those respects, his negligence in the respects he was found guilty was a cause of the collision. In addition, under the evidence and the court's instruction that plaintiff's driver was negligent, as a matter of law, in driving with his headlights dimmed so that he did not have sufficient light to see objects for seventy-five feet ahead of the vehicle (as required by sec. 85.06 (2) (h), Stats.), there was the issue for the jury as to whether that driver's negligence in that respect was a cause of the collision. However, in the questions submitted to the jury for the special verdict, there was no question inquiring specifically as to whether plaintiff's driver was negligent with respect to his headlights or whether his negligence in that respect was a cause of the collision. The only question requested or submitted as to any negligence on the part of plaintiff's driver was Question 4, as to whether the driver was "negligent at the time and place in question and under the conditions and circumstances shown by the evidence." This question was in such omnibus form that in the absence of any instruction defining or limiting its scope, the jury could consider and determine whether or not he was negligent in respect to either lookout, speed, management and control, or his headlights, or in any two or more of those respects; and if the jury had answered "Yes" it would have been impossible for

the court or counsel to know in what or how many respects the jury found him negligent. However, the jury answered that question "No," notwithstanding the court's instructions that the driver was negligent as a matter of law with respect to headlights. Then, having answered Question 4 "No," there was no answer returned by the jury to Questions 5 and 6, which called for the determination of the issues as to proximate cause, if the jury in answering Question 4 "Yes," found the driver negligent.

But the court, in deciding the motions after verdict, concluded that as it had instructed that the driver was negligent in respect to headlights, the jury considered (a) that the court had disposed of the question of negligence in respect to headlights; (b) that by Question 4 only the issues as to negligence in respect to lookout, speed, and control and management were to be determined by the jury; and (c) that if the jury so understood then, as the direction to answer Question 5 was contingent upon first answering Question 4 "Yes," there was no occasion for the jury to answer Question 5 as to whether the collision was the result of want of ordinary care of that driver. The court's conclusions in those respects are clearly but speculative or conjectural. But, moreover, in any event there was no question in the verdict and the jury was neither required, or given any opportunity, nor directed by any instruction to determine whether that driver's negligence in respect to the headlights was a cause of the collision. And that because of the omission to submit this important issue to the jury by a specific question and sufficient instructions in relation thereto, there was confusion and misunderstanding on the part of the jury,—rather than perversity,—is evident from the facts that upon examining the verdict as first returned by the jury the court said,—

"Members of the jury, you have not answered Question 4 of the special verdict and it will be necessary for you to return

to the juryroom and complete the verdict. Whether you answer Questions 5 and 6 will depend upon your answer to Question 4;"

and that upon the jury's subsequent return with the verdict, which was accepted, the court said,—

"Members of the jury, the court regrets to be obliged to inform you that the last two days have been wasted here. The court distinctly instructed you that the plaintiff, Walter H. Schumacher was guilty as a matter of law on the matter of headlights and you have found him not guilty of any negligence."

In view of the evident misunderstanding and confusion in the respects stated above, and also the uncertainty because of the omnibus form of the question submitted to the jury in relation to the issues as to whether there was negligence on the part of the driver of Wolf's second outfit, and if so in what respects it was a cause of the collision, it is impossible for any court to determine from the verdict on what ground or grounds the jury found defendant's driver was causally negligent. Consequently, and in view of the omnibus form of also Question 7, as to comparative negligence, and the absence of any finding by the jury or instruction by the court that Rohrer's negligence in respect to headlights was a contributing cause of the collision, it is likewise impossible on motions on proceedings after verdict to determine what negligence on the part of each driver the jury understood it was to take or did in fact take into consideration in making the comparison, or to determine whether the jury correctly decided the ultimate issue as to the comparative negligence. Under those circumstances the verdict is too indefinite and defective to constitute sufficient basis for the judgment granted thereon. *Devine v. Bischel,* 215 Wis. 331, 334, 254 N. W. 521. As we said then,—

"As this court has said: 'It is the function of a special verdict to secure a finding by the jury on each question litigated. In negligence cases each ground of negligence constitutes a distinct litigated question, and proper practice requires that the jury be given an opportunity to find specially with reference to each particular ground of alleged negligence. This cannot be accomplished by the submission of an omnibus question in which the jury is required to find generally upon the question of negligence.' . . . Since the enactment of sec. 331.045, Stats., relating to comparative negligence, it is even more important, whenever that statute is applicable, to have specific findings as to every set of ultimate facts upon which negligence is predicated. . . . To enable the jurors, in the first instance, to properly compare the negligence of the respective parties, and to enable the court, finally, to pass upon the jury's determination in that respect on the motions after verdict, it is necessary to first have the jury's findings as to every set of facts which could constitute causal negligence. . . . Manifestly, in view of the omnibus form of the questions it is impossible to determine what particular set or sets of facts as to negligence on the part of the respective parties entered into the comparison which the jurors were required to make, and, consequently, the verdict is too indefinite to enable the court to pass upon the jury's finding as to comparative negligence."

Consequently the judgment must be reversed, and a new trial ordered.

*By the Court.*—Judgment reversed, and cause remanded with directions to order a new trial.