JOHNSON, Administratrix, Respondent, vs. SIPE and another, Appellants.*

*January 8—February 3, 1953.*

* Motion for rehearing denied, with $25 costs, on March 31, 1953.

For the appellants there was a brief by *Stanley S. Chmiel* and *Bradford & Gabert,* all of Appleton, and oral argument by *Mr. Alfred S. Bradford* and *Mr. Chmiel.*

For the respondent there was a brief by *Benton, Bosser, Becker & Fulton,* attorneys, and *John B. Menn* of counsel, all of Appleton, and oral argument by *Mr. David L. Fulton* and *Mr. Menn.*

MARTIN, J. The jury found the appellant Sipe negligent with respect to lookout, speed, and management and control, and Johnson negligent with respect to the headlight and tail-light on his scooter. It is appellants' contention that there

is no evidence to support the finding that Donald Sipe was negligent, but that even if there were, Johnson was at least 50 per cent negligent as a matter of law.

As shown by the facts stated above, the evidence with regard to the lights on the scooter is in conflict. The question whether Johnson was causally negligent in that respect was for the jury, and it found him so. It could also reasonably infer from the evidence, however, that even though Johnson may have been negligent in failing to provide the degree of illumination on the scooter which was required by statute, the reflectibility of the taillight glass was such that Sipe should have seen it from a distance of 100 feet or more if he had maintained a proper lookout.

Appellants assert that there is no evidence of Sipe's negligence with respect to speed or management and control. Sipe testified that although he did not recall having looked at his speedometer, he must have been going 40 to 45 miles an hour, since that was the normal average speed he drove at night. He also testified that the lights of the oncoming car blinded him to some extent. The fact that he continued on without reducing his speed when he was blinded by the lights is sufficient to submit the question of management and control and sustains the jury's finding of negligence in that respect. The jury could reasonably infer from the evidence that his visibility was indeed interfered with, since he did not see the scooter until he was within 35 feet of it, and under such circumstances it properly found him negligent in not reducing his speed so that he could stop his car within the range of his vision.

It was established by the physical facts that the brakes of the Sipe car were jammed on at a distance of 25 feet before it hit the scooter. Sipe testified that he did not have time to do anything other than apply his brakes. But the jury could well have concluded that if he had time to use his brakes at that distance from the scooter, he also had time to turn

his car to the right and avoid striking it. Apparently Johnson was in about the center of the west lane. There was a 12-foot shoulder at the side of the pavement. It is reasonable to conclude that the slightest turn of the wheel, even at a distance of 25 feet, would have caused the Sipe car to safely pass the narrow scooter on the right.

It is true that this court has not hesitated to disturb a jury verdict as to percentages of negligence where the evidence conclusively shows that the negligence of one party equals or exceeds that of the other. However, that is not the situation here.

We cannot conclude from all the evidence that Johnson had negligently placed himself in a position of imminent danger. He had the right to be where he was, and, despite the fact that he had inadequate lights on his scooter, the jury found that he could be seen by any other user of the highway in the exercise of ordinary care. The cases cited by appellants are distinguishable on their facts.

It was strictly within the province of the jury to determine the extent to which Sipe's failure to see the scooter was caused by Johnson's lack of proper illumination, considering that Sipe's vision was affected by the lights of the approaching automobile, and to make its comparison in the light of that determination together with a consideration of the dangerous instrumentality in Sipe's hands and his negligence as to speed and management and control. It was not for the trial court, nor for this court, to substitute its judgment for that of the jury under the facts and circumstances of this case. We have consistently held that on evidence of this kind and particularly where the negligence of the parties differs in kind and quality, the comparison is for the jury. *Nimits v. Motor Transport Co.* (1948), 253 Wis. 362, 34 N. W. (2d) 116; *Carr v. Chicago & N. W. R. Co.* (1950), 257 Wis. 315, 43 N. W. (2d) 461.

Appellants complain that the form of the special verdict was improper for the reason that it should not have included a question as to management and control on the part of Donald Sipe. At about the time the testimony was closed the following took place between the court and counsel in chambers:

"The Court: Have you gentlemen any instructions to request and any questions in the special verdict to request? "Mr. Parnell: We object to the inclusion in the special verdict of a question inquiring as to the control and management.
"The Court: So far there has been no question asked.
"Mr. Bradford: I'll request the court to give a question in the special verdict on control and management.
"The Court: Write it out so there won't be any argument about it. Then I'll tell you what we will do with it."

Apparently no written questions were submitted to the court, but a copy of the proposed special verdict was submitted to the attorneys in time for them to make any objection they may have had. No objections were made.

This court has repeatedly held that counsel's failure to object to the proposed special verdict before it is submitted to the jury constitutes a waiver of any right thereafter to object to the verdict as submitted. *Nimits v. Motor Transport Co., supra; Stellmacher v. Wisco Hardware Co.* (1951), 259 Wis. 310, 48 N. W. (2d) 492; *Smith v. Benjamin* (1952), 261 Wis. 548, 53 N. W. (2d) 619.

As set forth earlier in the opinion, we are convinced that the evidence presented a jury issue as to management and control on the part of Donald Sipe, and therefore hold that the special verdict as submitted was proper.

The jury awarded Johnson's widow $2,400 for loss of society and companionship and $15,000 for pecuniary loss, the latter amount being reduced by the trial court to $12,500, according to law. As to appellants' argument that the jury

was prejudiced in the widow's favor because of her emotional conduct at the trial, we may say that the record discloses no basis for such a conclusion. In any event, reversal would not be warranted unless the verdict itself showed the jury's passion and prejudice.

There is ample evidence in the record that Johnson was a healthy, hard-working, diligent man and a responsible employee in his regular work at the Sears store and in his nighttime job at the filling station. He was the sole support of his wife and it was not necessary for her to work outside the home. Decedent had a life expectancy of thirty-four years; at the time of his death he was earning close to $500 a month. In view of his earnings, stability, and good habits, the sum of $15,000 as the value of the support and financial benefit his widow probably would have received if he had lived, was not excessive, and we cannot say that the jury showed passion and prejudice in arriving at that amount.

*By the Court.*—Judgment affirmed.

* Motion for rehearing denied, with $25 costs, on March 31, 1953.