Demma L. Millsap, Individually and as Administratrix of the Estate of Jack H. Millsap, Deceased, Plaintiff-Appellee, v. Central Wisconsin Motor Transport Company, a Corporation, Defendant-Appellant. Consolidated.
Robert Millsap, a Minor, by Gib Millsap, His Father and Next Friend, Plaintiff-Appellee, v. Central Wisconsin Motor Transport Company, a Corporation, Defendant-Appellant.

Gen. No. 48,632.

First District, Second Division.

January 8, 1963.

Opinion on rehearing May 7, 1963.

1

Van Duzer, Gershon & Jordan, of Chicago (Louis Gershon, and Horace W. Jordan, of counsel), for appellant.

James A. Dooley, of Chicago, for appellees.

MR. JUSTICE FRIEND delivered the opinion of the court:

On November 30, 1954 an automobile driven by Jack H. Millsap, in which his nephew, Robert Millsap, aged fourteen, was riding as a passenger, collided with a tractor-trailer truck owned and operated by Central Wisconsin Motor Transport Company on Highway 41 near West Bend in Washington County, Wisconsin. Jack Millsap was killed, and his nephew severely injured. The Millsaps were residents of Illinois; defendant was incorporated in this state as well as Wisconsin. Accordingly, suit to recover damages for personal injuries to Robert Millsap was filed on February 24, 1955 in the Circuit Court of Cook County. Defendant filed an answer denying allegations of negligence. December 20, 1956 defendant had leave and filed a third-party complaint against Demma Millsap, administratrix, for contribution in the event joint liability should be found. Answer was filed, and the case was at issue pending its call for trial. On March 2, 1955 suit for wrongful death was filed in the Superior Court of Cook County, to which Central Wisconsin filed an answer together with a counterclaim for property damage to its equipment. This case was then also at issue and pending trial.

The Superior Court case was the first one to reach trial, and on May 2, 1961 was assigned by the assignment judge for both courts to a judge of the Circuit

5

Court. After the parties reported to him for trial of the Superior Court case, Demma Millsap's attorneys for the first time sought to consolidate the two actions. At the same time a motion was filed to transfer the Superior Court case to the Circuit Court for consolidation, and an order to that effect was entered over objection by defendant. The court then proceeded to try both cases, as consolidated, simultaneously. At the outset of the trial the court dismissed the third-party complaint. The jury returned a verdict in the amount of $35,000 for Robert Millsap, and one of $17,570.40 for Demma Millsap, administratrix. Central Wisconsin appeals from the judgments on the verdicts.

 Central Wisconsin urges at the outset that the court deprived it of a fair and proper trial (1) by consolidating and trying the two cases together, and (2) in dismissing the third-party complaint for contribution. We find no merit in the first contention. The Circuit and Superior Courts of Cook County are courts of concurrent jurisdictions; they have a single assignment judge, a single motion judge, and their judges sit interchangeably. Both courts have uniform rules, none of which prohibits inter se transfers. Moreover, the act providing for the transfer of civil actions (Ill Rev Stats 1961, c 146, § 37) expressly empowers the court to which a case is assigned to order its transfer, while under the act providing for consolidation and severance of actions (Ill Rev Stats 1961, c 110, § 51) courts have inherent power and statutory sanction to consolidate "as an aid to convenience, whenever it can be done without prejudice to a substantial right." These statutes have particular and appropriate application to the Circuit and Superior Courts as indicated in A.C.F. Industries, Inc. v. Industrial Commission, 8 Ill2d 552, 134 NE2d 764 (1956), where the problem arose and became an issue when orders entered in a single proceeding were taken by

6

certiorari to two different courts. There the Supreme Court held (p 559) that "the power of the circuit and superior courts of Cook County to transfer a case to the appropriate court, 'if considerations of justice or convenience require it,' is adequate to solve problems of this kind . . . ."

■ Specifically, defendant objects to the transfer because the clerks of the respective courts did not make a physical transfer of the documents and files. Although both section 37 of the Venue Act (Ill Rev Stats 1961, c 146) and section 10 of the Civil Practice Act (Ill Rev Stats 1961, c 110) impose the duty on the respective clerks to transfer and receive appropriate records, "the act of sending the papers to the transferee court is held to be a mere ministerial act of the clerk of the transferring court" (14 ILP Courts § 257, p 404, citing Herb v. Pitcairn, 392 Ill 138, 147, 64 NE2d 519 (1945)) and failure to receive the papers does not defeat the jurisdiction of the transferee court.

■ Nor do we think it was an abuse of discretion to consolidate the cases for trial. Section 51 of the Practice Act, as we have already pointed out, provides for consolidation of actions, and the Supreme Court in Peck v. Peck, 16 Ill2d 268, 275, 157 NE2d 249 (1959), held that consolidation is discretionary with the trial court and found "no abuse of discretion where the separate causes are of the same nature, arise from the same act, event or transaction, involve the same or like issues, and depend largely or substantially upon the same evidence, and when a joint trial will not give one party an undue advantage or prejudice the substantial rights of any party." Defendant was not deprived of any substantial right, and "consolidation," as the court said (p 276) in the Peck case, "makes for expedition, conservation of the time of the court, avoids duplication of effort, and saves unnecessary expense."

Dismissal of defendant's third-party complaint for contribution presents a different problem. This accident occurred in the State of Wisconsin. It is well settled that the law of the state where the accident occurred governs the substantive rights. Whitney v. Madden, 400 Ill 185, 188, 79 NE2d 593 (1948); McLean v. Chicago Great Western Ry. Co., 3 Ill App 2d 235, 241–242, 121 NE2d 337 (1954). One of the substantive rights in Wisconsin is the right to contribution between tort-feasors. At the time of the accident this was considered a right based on principles of equity, but it was subsequently incorporated in the Wisconsin statute known as the Uniform Joint Obligations Act (Wis Stats 1956, §§ 113.01–113.05). The Supreme Court of Wisconsin, in Heimbach v. Hagen, 1 Wis2d 294, 83 NW2d 710, 712 (1957), said that "contribution between joint tort-feasors is in origin an equitable principle, and arises when one joint tort-feasor pays more than his equitable share of the damages." The foregoing rules have been applied to automobile cases involving passenger injuries. In the case at bar Robert Millsap sued Central Wisconsin for his injuries and damages resulting from the accident. If both his driver, Jack H. Millsap, and the Central Wisconsin driver should be found guilty of negligence which resulted in injuries and damages, then Central Wisconsin would be entitled to a judgment for contribution as against the estate of Jack H. Millsap. This right was asserted by Central Wisconsin in its third-party complaint which had previously been allowed by Judge Fisher, the motion judge, and was part of the record when the two cases were consolidated. However, because of the subsequent order dismissing the third-party complaint, Central Wisconsin was deprived of its right to present the issue of contribution.

In Bielski v. Schulze, 16 Wis2d 1, 114 NW2d 105 (1962), the Supreme Court of Wisconsin took occasion

8

to re-examine the doctrine of contribution between joint tort-feasors. It held (p 107) that contribution should be proportionate to the percentage of causal negligence, and in re-examining the doctrine of gross negligence (which is characterized in Illinois as wilful and wanton misconduct) decided (pp 111–114) that it should be abolished and that such conduct would be treated as ordinary negligence for the purpose of comparison and contribution and for all other purposes. In the course of its discussion the court observed that the method of ascertaining a percentage degree of negligence to be attributed to the respective parties would not complicate litigation. The court continued (p 110):

> "Most of the negligence cases are now tried with a special verdict and a comparison of contributory negligence, and no insuperable difficulties would be encountered. It is true under the present practice, if the plaintiff is not found causally negligent, no apportionment need be made, but at that point in the lawsuit the form of the verdict has included a comparison question and the jury has been instructed upon its use [referring in a footnote to Rashke v. Koberstein, 220 Wis 75, 264 NW 643 (1936)]. In the minority of cases which would not have a comparison question, the new rule would require the jury to determine an additional inquiry on the relative degrees of negligence for contribution purposes. Any change requires some adjudgments [sic], but those which we foresee are not sufficient grounds to deny the benefits of the new rule."

This decision, filed in March of this year, is the latest expression of the Wisconsin court on the subject, and we commend its careful perusal.

Counsel say that the order of dismissal was based on the decision of Mutual Serv. Cas. Ins. Co. v. Prudence Mut. Cas. Co., 25 Ill App2d 429, 166 NE2d 316

(1960), but in that case we affirmed the court's allowance of defendant's motion to strike the statement of claim largely because the public policy of the State of Illinois does not permit direct action against liability insurers. An analogous situation was presented in Hughes v. Fetter, 341 US 609 (1951), which involved statutory provisions excluding actions for wrongful death occurring in another state. Wisconsin had such a statute and refused to entertain an action for death occurring in an automobile accident in Illinois. The Supreme Court held that the full-faith-and-credit clause required the Wisconsin court to entertain the action. In First Nat'l Bank v. United Air Lines, 342 US 396 (1952), the court invalidated an Illinois statute excluding foreign-death actions in cases where the action could be brought where the death occurred, referring to its Hughes decision. We hold that the order dismissing the third-party complaint should be vacated, and we direct that Central Wisconsin be afforded an opportunity to proceed with its claim for contribution as part of this litigation.

 In his closing argument plaintiffs' attorney suggested to the jury a mathematical formula for fixing damages on the basis of allowing five dollars per day for pain and suffering. Defendant promptly objected, but the court overruled the objection and permitted counsel to develop this argument. There is a diversity of opinion in the various states on this subject. At the time of trial of the case at bar the Illinois Supreme Court had the question under advisement on a certificate of importance in Caley v. Manicke, 24 Ill2d 390, 182 NE2d 206 (1962), and on March 23, 1962 filed its opinion, placing Illinois in the growing ranks of jurisdictions which prohibit this type of argument. New Jersey, Wisconsin, Missouri, Virginia, and West Virginia had, before Illinois, ruled that such a method of computing monetary damages was improper. In the Caley case the court squarely held

10

(pp 392–394) that it was reversible error to permit plaintiff's counsel to use this type of argument to the jury, since the formula, as the court concluded, tends to discourage, rather than encourage, the jury's reasonable and practical consideration of the evidence of damages. For this sole error, the court reversed the judgment of the Appellate Court for the Second District and remanded the cause for a new trial. In the same filing the Supreme Court, in Jensen v. Elgin, J. & E. Ry., 24 Ill2d 383, 386–387, 182 NE2d 211 (1962), again said that it was reversible error to permit counsel to use a time-unit mathematical formula in his argument to the jury, and stated that its decision in the Caley case was controlling in the Jensen case.

In an additional memorandum of law on this issue, filed since the case was argued orally, plaintiffs' counsel asserts that the Caley and Jensen decisions should be given only prospective effect. In support of this contention he says that the changes brought about by these decisions are procedural only, and he cites numerous cases from other jurisdictions which hold that procedural changes are to be prospectively applied. It is further suggested that to give the Caley and Jensen holdings retroactive effect will mean the granting of many new trials and the reversal of judgments obtained according to established practice. "Litigants and lawyers," argues counsel, "have the right to know what the law is and should not be penalized because of decisions affecting only procedural or adjective law." Since we are reversing the judgment here for reasons unrelated to the use of pain-per-diem argument, we need not decide whether the holdings of the Caley and Jensen cases relate to substance or procedure, or are to be retroactively applied in pending appeals in which pain-per-diem argument is the only reversible error. In the event of a retrial,

11

plaintiffs' counsel will follow the rule laid down by the Supreme Court in the Caley and Jensen cases.

■ ■ As the remaining principal ground for reversal it is urged that the court erred in refusing to submit to the jury special verdicts or interrogatories which were tendered by defendant on the question of percentage of negligence, and in improperly instructing the jury on the Wisconsin law of comparative negligence. Since this case will probably have to be retried, we find it necessary to express our views on the questions as an aid to the court on retrial of the case. Without detailing the evidence as to the accident, it may be stated that there was a sharp conflict as to the causal negligence of the parties. As we have already said, in 1962 the Supreme Court of Wisconsin in the Bielski case abolished gross negligence in that state, and only causal negligence is considered in comparative negligence cases. All negligence cases in Wisconsin are handled under the Wisconsin Comparative Negligence Act (Wis Stats § 331.-045) which provides:

> "Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering."

Under this statute the negligence of a party seeking recovery is compared with the negligence of the party against whom the recovery is sought. It is obvious that in order to apply this statutory enactment it becomes necessary to fix the respective percentages of negligence. This is done in Wisconsin by submitting

12

special verdicts or interrogatories to the jury requiring a written finding upon the various issues of fact. The reasons for this are well set forth in Schumacher v. Wolf, 247 Wis 607, 20 NW2d 579, 582 (1945):

> "As we said then [Devine v. Bischel, 215 Wis 331, 254 NW 521, 522 (1934)], 'As this court has said: "It is the function of a special verdict to secure a finding by the jury on each question litigated. In negligence cases each ground of negligence constitutes a distinct litigated question, and proper practice requires that the jury be given an opportunity to find specially with reference to each particular ground of alleged negligence. This cannot be accomplished by the submission of an omnibus question in which the jury is required to find generally upon the question of negligence." . . . Since the enactment of section 331.045, Stats, relating to comparative negligence, it is even more important, whenever that statute is applicable, to have specific findings as to every set of ultimate facts upon which negligence is predicated. . . . To enable the jurors, in the first instance, to properly compare the negligence of the respective parties, and to enable the court, finally, to pass upon the jury's determination in that respect on the motions after verdict, it is necessary to first have the jury's findings as to every set of facts which could constitute causal negligence. . . . Manifestly, in view of the omnibus form of the questions, it is impossible to determine what particular set or sets of facts as to negligence on the part of the respective parties entered into the comparison which the jurors were required to make, and, consequently, the verdict is too indefinite to enable the court to pass upon the jury's finding as to comparative negligence.' "

13

Consequently, at the conclusion of the testimony and during the conference on instructions, defendant moved that the jury be required to find specially upon several questions which it tendered with its motion as follows:

"Question 1. Was the collision between the vehicles being driven by Jack H. Millsap, Deceased, and Donald Garatz, due to an unavoidable accident?

Answer ————

If your answer to Question 1 is 'no,' then answer the following question:

At and immediately prior to the accident was Jack H. Millsap, Deceased, negligent as to

 a. Speed? Answer ————

 b. Management and control? Answer ————

 c. Yielding ½ of the main traveled portion of a roadway to a vehicle approaching from the opposite direction? Answer ————

"Question 2. If you answer any or all of the sub-divisions of Question 1 'yes' then answer this question:

Was such negligence a cause of the accident with respect to

 a. Speed? Answer ————

 b. Management and control? Answer ————

 c. Yielding ½ of the main traveled portion of a roadway to a vehicle approaching from the opposite direction? Answer ————

14

"If the Court is of the opinion that the driver of defendant's vehicle, Donald Garatz, was guilty of any causal negligence then the defendant, Central Wisconsin Motor Transport Company, requests the following question be submitted to the jury in connection with the special verdict:

"Question 3. If you have found by your answers to Questions 1 and 2 that both Jack H. Millsap, deceased, and Donald Garatz were negligent and that such negligence was a cause of the accident then answer this question:

Assuming the combined negligence of both parties causing the accident to be 100%, what percentage of the total negligence do you attribute to

a. Jack Millsap, deceased ———%

b. Donald Garatz ———%"

The trial judge denied the motion and refused to submit to the jury these interrogatories with proper instructions; rather, over defendant's objection, the trial judge gave two instructions tendered by plaintiffs: No. 6 which set out verbatim the Wisconsin Comparative Negligence Act, and No. 24 which told the jury that they should consider all the negligence which contributed to the accident as 100 per cent and then attribute to each of the parties the percentage of negligence which the evidence indicated was proper.

■ ■ In a conflict-of-laws case, matters of procedure are governed by the law of the forum (Chicago & E. I. Ry. Co. v. Rouse, 178 Ill 132, 52 NE 951 (1899)), while matters of substance are controlled by the law of the place of the occurrence (Mithen v. Jeffery, 259 Ill 372, 376, 102 NE 778 (1913); Opp v. Pryor, 294 Ill 538, 541, 128 NE 580 (1920)). For the purpose of applying these rules, the law of the forum is employed to determine whether a matter is

15

substantive or procedural (Restatement, Conflict of Laws § 584 (1934)).

A pivotal issue here is whether, according to the law of Illinois, the use of special interrogatories in a comparative negligence case growing out of an occurrence in Wisconsin is a matter of substance or of procedure. Plaintiffs' counsel relies on Lang v. Rogney, 201 F2d 88 (8th Cir 1953), as determinative of the proposition that under the Wisconsin comparative negligence doctrine the submission of special interrogatories was a matter of procedure and within the discretion of the judge. The Lang case involved a suit in the United States District Court in Minnesota by a Wisconsin resident to recover for injuries sustained in Wisconsin, when plaintiff was struck by an automobile driven by defendant, a resident of Minnesota. The Wisconsin Comparative Negligence Act was applied, but special interrogatories were not submitted in accordance with the Wisconsin rule. On appeal the court held that Rule 49(a, b) of the Federal Rules of Civil Procedure made the submission of special interrogatories a matter of procedure to be governed by the discretion of the trial judge. The Illinois statute relating to special interrogatories (Ill Rev Stats 1961, c 110, § 65), like the related Wisconsin provision pertaining to special interrogatories, makes special findings by the jury mandatory at the request of either party, unlike the federal rule which makes the submission of such interrogatories discretionary with the trial judge. In the Lang case the court pointed out (p 97) that the submission of special interrogatories was made mandatory in Wisconsin by statute while under federal rule it was within the discretion of the trial court, but it commented (p 96) that it was "unfortunate" that the trial court did not submit special interrogatories in accordance with the Wisconsin practice. In a later case, Odekirk v. Sears Roebuck & Co., 274 F2d 441 (7th Cir 1960),

16

where the reviewing court affirmed the decision of the trial court, special interrogatories in accordance with the Wisconsin practice were submitted to the jury.

In urging the impropriety of setting out the Wisconsin Comparative Negligence statute in the form of an instruction, defendant's counsel refer to De Groot v. Van Akkeren, 225 Wis 105, 273 NW 725 (1937). In that case defendants contended that it was error on the part of the trial judge to read to the jury the Comparative Negligence statute. The reviewing court reversed the judgment for plaintiffs on another ground and remanded the cause for a new trial. It did not decide whether in that particular action the reading of the statute was prejudicial, but it admonished the trial court (p 730) upon a retrial to avoid telling the jury the effect of their answers by reading the Comparative Negligence statute to them, and pointed out (pp 729–730) that it had been repeatedly held that a jury should not be instructed as to the effect of their answers, such erroneous instructions generally having been considered prejudicial.

Plaintiffs' counsel cites several Illinois cases (Santiemmo v. Days Transfer, Inc., 9 Ill App2d 487, 133 NE 2d 539 (1956); Reese v. Buhle, 16 Ill App2d 13, 147 NE2d 431 (1957); and Miller v. Vannier, 28 Ill App 2d 258 (Abst 1960)) in support of his contention that instructions in statutory language are proper, but all these cases involve statutes which define the rights and duties of pedestrians and motorists in the context of specific driving situations. None of the statutes involved was abstract in its terms. The crux of the Reese case, for example, was an instruction relating to the right of way. The trial court refused to give plaintiffs' tendered instruction which was in statutory language. The reviewing court held that failure to give the instruction was serious error and pointed out (p 17) that the statute not only gives the

17

pedestrian the right of way, but provides a definition.

The refusal of the court in this proceeding to submit the interrogatories to the jury eliminated for all practical purposes the important issue of comparative negligence from the case and made it impossible to tell whether the jury gave any consideration whatsoever to this issue; but even if they did, it is impossible to tell what percentage of negligence, if any, they found on the part of Jack Millsap, and without such a finding it is impossible to find whether his estate is entitled to any recovery at all, or whether the recovery should be reduced by a percentage of negligence, or whether the estate is liable for contribution on the recovery of Robert Millsap. In a federal decision (Wroblewski v. Exchange Ins. Ass'n, 273 F2d 158, 161 (7th Cir 1959)) the court stated that under Wisconsin law the apportionment of negligence is almost always for the jury. In the Bielski case the Wisconsin court said (p 109) that the Comparative Negligence statute must be regarded as an attempt to correlate the amount of recovery to the degree of negligence, at least to a limited extent, a recognition that justice and fairness demand a comparison of the relative fault of tort-feasors in realistic terms of money, when possible. In Wisconsin comparison of the negligence of the parties is held to be peculiarly within the province of the jury (Niedbalski v. Cuchna, 13 Wis2d 308, 108 NW2d 576, 581 (1961); Hadjenian v. Sears, Roebuck & Co., 4 Wis2d 298, 90 NW2d 786, 790 (1958)), and particularly is this so where the negligence of the parties differs in kind and quality (Johnson v. Sipe, 263 Wis 191, 56 NW2d 852, 855–856 (1953), and cases cited therein).

The Wisconsin Comparative Negligence Act remains in its original form except that the phrase "by the jury" in the original act was omitted by an amend-

ment in 1949. However, during the thirty years that the statute has been in effect, the Wisconsin courts have consistently required the jury to make an evaluation of the percentage; then the court has applied that percentage figure to determine the final result. The jury are not advised in any respect as to the effect of their findings on percentages; it is the court that applies the percentage to the final judgment. The Wisconsin Supreme Court has stated that a jury should not be informed of the effect of their answers respecting percentages of negligence, and has admonished the trial courts not to tell juries the effect of their percentages by reading the statute to them. De Groot v. Van Akkeren, 225 Wis 105, 273 NW 725, 729–730 (1937), and cases cited therein. Discussions of this subject will be found in Knoeller, Review of the Wisconsin Comparative Negligence Act—Suggested Amendment, 41 Marq L Rev 397 (1957–1958), and in Campbell, Ten Years of Comparative Negligence, 1941 Wis L Rev 289.

The trial judge had refused the special interrogatories tendered by defendant, and evidently for that reason he refused defendant's tendered instructions No. 10 and No. 17 dealing with the treatment of the comparative negligence of the drivers. Instead, and over the objection of defendant, he gave two instructions tendered by plaintiffs, No. 6 quoting the Wisconsin Contributory Negligence statute, and No. 24 treating the apportionment of the percentage of negligence. We agree with defendant's contention that these instructions were erroneous and that they were inadequate to instruct the jury on the complexities of comparative negligence. No. 6 was given in violation of the Wisconsin prohibition against reading or giving the statute to the jury; and inasmuch as the jurors were given no special interrogatories on percentages, plaintiffs' instruction No. 24 was meaningless.

19

If our judgment is correct, then the proper use of the Wisconsin interrogatory process is so intimately tied to the correct application of the comparative negligence doctrine as to constitute an integral part of the substance of that doctrine. To hold otherwise, and to permit a reading of the Wisconsin statute to the jury, accompanied by imprecise instructions, would have the practical effect of emasculating the Wisconsin statute which we seek to apply. More than mere procedure is involved here. As a result of the trial court's ruling defendant was deprived of the benefit of the Wisconsin Comparative Negligence Act which is well established in that state and which we hold relates to substance, rather than to procedure, so that the Wisconsin interrogatory procedure must be employed in actions brought here.

For the reasons indicated, the judgment of the Circuit Court is reversed, and the cause remanded for a new trial.

Judgment reversed and cause remanded for a new trial.

BRYANT, P. J. and BURKE, J., concur.

## On Rehearing

 Plaintiffs' petition for rehearing is largely a reargument of the points in their original brief. They again assert that although the accident occurred in Wisconsin, defendant's claim for contribution under Wisconsin law should be dismissed as opposed to our public policy because Illinois follows the common law rule denying contribution to joint tort-feasors. Nevertheless they urge that we should apply the Wisconsin Comparative Negligence Act (Wis Stats 331.045), although Illinois follows the common law rule in denying recovery to plaintiffs who are in any degree con-

20

tributorily negligent; and they argue that the application of the Wisconsin Comparative Negligence law is discharged by reading the text of the Wisconsin statute to the jury, unaccompanied by the special interrogatories made mandatory in Wisconsin.

It is true that in Mutual Serv. Cas. Ins. Co. v. Prudence Mut. Cas. Co., 25 Ill App2d 429, 166 NE2d 316 (1960), we said that the Wisconsin statute relating to joint tort-feasors is opposed to our public policy. We also held that the action was properly dismissed under the provision of our Practice Act which prevents direct actions against liability insurers. On reconsideration of that case, and in the light of authorities not heretofore cited in this proceeding or in the Mutual Service case, it seems clear that to create a public policy barrier to the enforcement of a foreign law, more is required than a mere difference between the law of the forum and that of the sister state. Biewend v. Biewend, 17 Cal2d 108, 109 P2d 701 (1941). Nor does dissimilarity of legislation prove that the public policy of the forum is offended by the foreign law. Loucks v. Standard Oil Co., 224 NY 99, 120 NE 198 (1918). As there stated by Judge Cardozo (p 202) : "The courts are not free to refuse to enforce a foreign right at the pleasure of the judges, to suit the individual notion of expediency or fairness. They do not close their doors, unless help would violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal." Thus, a gambling obligation which arose in one state has been denied enforcement in another state when the law of the forum showed a deep repugnance to gambling. Ciampittiello v. Campitello, 134 Conn 51, 54 A2d 669 (1947). Simply because a right of action created by a foreign statute does not exist here will not necessarily render enforcement of that right repugnant to good morals or natural justice

or prejudicial to the best interest of our people. Chicago & E. I. R. Co. v. Rouse, 178 Ill 132, 52 NE 951 (1899). In the case before us, no deep repugnance between the law of Illinois and that of Wisconsin has been shown. Public policy is no barrier to the action here.

The anomalous position taken by plaintiffs illustrates the difficulties inherent in a broad application of the public policy concept in conflict of laws cases. Plaintiffs ask us to declare unenforceable as against our public policy the Wisconsin statute which permits contribution among tort-feasors; at the time they seek enforcement of another Wisconsin statute which is no less contrary to our law than is the law of contribution. Clearly we could not sustain plaintiffs' position with respect to contribution without also holding that the Wisconsin Comparative Negligence law is opposed to our public policy, because our law denies recovery to the contributorily negligent plaintiff. We are in effect asked to hold that any foreign substantive law which differs from our own is unenforceable here for reasons of public policy.

It has frequently been held that contribution between joint tort-feasors is a right arising under the substantive law of the states. Howey v. Yellow Cab Co., 181 F2d 967 (3d Cir 1950), affd United States v. Yellow Cab Co., 71 Sup Ct 399 (1951); Bentley v. Halliburton Oil Well Cementing Co., 174 F2d 788 (5th Cir 1949). Therefore "if there is a right of contribution, it must stem from the law of the state where the tort was committed." North Dakota v. Przybylski, 98 F Supp 21, 22 (DC Minn 1951). Thus, in Charnock v. Taylor, 223 NC 360, 26 SE2d 911 (1943), contribution was refused because no such right existed in Tennessee where the accident occurred, even though the forum, North Carolina, recognized the right. Consistent with the above authorities, the Maryland court in Steger v.

22

Ekyud, 219 Md 331, 149 A2d 762 (1959), permitted contribution between joint tort-feasors, since this right was recognized by New Jersey, the place of the injury. Accordingly we conclude that the right of contribution as existing in Wisconsin is the law of this case.

As to other matters urged in the petition for rehearing, we reaffirm our former opinion. The judgment of the Circuit Court is reversed and the cause remanded for a new trial.