ARLETTA JOHNSON, Plaintiff-Appellant, *v.* EDMUND WARD *et al.,* Defendants-Appellees.

(No. 53742;

First District—July 6, 1972.

1016

Gann, McIntosh, Stead, and O'Shaughnessy, of Chicago, (Donald J. Parker, of counsel,) for appellant.

William J. O'Brien, of Chicago, for appellees.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

This cause of action involves a suit for personal injuries sustained by plaintiff in Wisconsin while she was a passenger in an automobile owned and operated by defendant. Plaintiff's injuries were received when the auto went out of control and off the road. The action was premised on the Wisconsin Comparative Negligence Statute, Wisc. Stats. 331.045. After a jury trial, the jury returned a verdict in favor of defendant, Edmund Ward, and the court entered judgment on the verdict. Liberty Mutual Insurance Company had been dismissed as a defendant prior to trial.

Both sides agree that at the time of trial, matters of procedure were governed by the law of the forum, Illinois, while matters of substance were controlled by the law of the place of the injury, Wisconsin. *Millsap v. Central Wisconsin Motor Trans. Co.*, 41 Ill.App.2d 1, 189 N.E.2d 793. Since the instant trial, our Supreme Court has invoked the doctrine that the local law of the State where the injury occurred shall determine the rights and liabilities of the parties unless Illinois has a more significant relationship with the occurrence. *Ingersoll v. Klein*, 46 Ill.2d 42, 262 N.E.2d 593.

Plaintiff's original complaint charged that defendant operated his vehicle when it was in a defective mechanical condition. Defendant moved to strike the complaint on the ground that it failed to allege that defendant had knowledge of the defect, but the motion was denied. However,

at the time of trial, plaintiff withdrew her charge that the occurrence was caused by any defect in defendant's vehicle, and substituted the charge that defendant was in exclusive control of the vehicle and that the accident could not have happened without his negligence. Defendant's answer was allowed to stand to the amended complaint. That answer denied negligence with respect to the condition of the vehicle and also charged that plaintiff as a guest accepted the defects of the vehicle. In accordance with Wisconsin law, the jury was given a special verdict form. The jury found that neither of the parties were negligent and that the sole cause of the occurrence was the breaking of the A-frame, the lower control arm of the automobile rendering it uncontrollable. After verdict plaintiff raised the question of whether the pleadings sufficiently presented that issue to the jury. Although questioning the need of doing so, the trial court directed defendant to file an amended answer, setting forth that a broken A-frame in the vehicle caused the accident.

Plaintiff and her husband were the vacation guests of defendant and his wife at defendant's summer home in Devil's Lake State Park, Wisconsin. The State Park is about three miles from Baraboo, Wisconsin. Late in the afternoon of August 13, 1962, defendant, accompanied by his wife and plaintiff, was driving from Baraboo to the summer home. In the middle of a curve on the road, defendant found that he could not turn the steering wheel. Defendant recalled applying the brakes to slow the car when he became aware that it was leaving the road. The wheel was locked and the car left the road on a tangent to the curve. The vehicle turned over several times and came to rest in a culvert. A county policeman measured the skid marks at 310 feet.

Plaintiff testified that she had driven the vehicle in question on the morning of the day of the accident. She said that she was unfamiliar with the car and had stalled the engine several times, but the steering mechanism had operated normally while she drove the car. Plaintiff testified that they had consumed liquor that afternoon, but that defendant's driving ability was not impaired.

Defendant testified that he had purchased the car for $130 and that at the time of the purchase he had an auto mechanic named Nicholas Hoffman inspect the car for defects. The mechanical tightened the steering mechanism which had been loose and repaired the brakes. Prior to the accident, defendant had no difficulty with the steering. Defendant testified that he drank two bottles of beer at a tavern prior to the accident. He stated that plaintiff had made no complaints about his driving prior to the accident.

Defendant's wife testified and corroborated her husband's statement that plaintiff made no complaint about his driving. She also testified that

she did not notice anything unusual about the steering prior to the accident.

Edward W. Grosshans testified for the defendant that after the accident he purchased the vehicle in question from defendant. Grosshans was in the business of storing wrecked cars and testified that he did nothing to bend or break the A-frame of the car after he purchased it. Grosshans testified that photographs showed the A-frame or suspension part of the left front wheel in an unnatural broken and bent condition.

Ralph J. Buss testified for the defendant as an expert witness. He had been an auto mechanic for 27 years and had examined the car in question. In his opinion the bent A-frame was the cause rather than the result of the accident. The damage to the A-frame was caused by stress. Buss stated that while the steering wheel turned when the vehicle rested on blocks, it was his opinion that because of the bent A-frame it would not turn while resting on the four wheels. He had examined the vehicle's brakes, and there were no defects.

Over plaintiff's objections, Raymond L. Fales was permitted to testify for defendant as an expert witness. Fales testified that defendant's failure to turn the steering wheel was caused by the collapse of the left lower control arm, the A-frame. He testified that the bending of the A-frame caused the wheels to "toe-in" which, in turn, caused the tires to "scrub" on the pavement moving the car on a tangent to the curve. In examining a photograph of the A-frame, Fales identified cracks as fatigue marks. He stated that he was an automotive engineer, not a metallurgist.

Outside the presence of the jury, both sides disclosed an unwillingness to call Gordon Myrah as a witness. At the request of defendant's insurance carrier, Myrah had made an appraisal of the damaged vehicle. The trial court offered to call Myrah as a court's witness, permitting both sides to cross-examine. The record reveals that counsel for both parties expressly agreed to this procedure. Myrah testified that the broken A-frame was the cause of the locked steering wheel and of the accident. He explained an earlier contradictory opinion by stating that at the time of his original inspection he believed that the vehicle had been involved in a collision with another vehicle.

On appeal plaintiff contends that the substantive tort law of Wisconsin was improperly applied; that the court erred in dismissing plaintiff's complaint brought directly against defendant's insurance carrier; that the trial court improperly allowed defendant to prove an affirmative defense without pleading that defense; that the trial court erred in permitting a witness to be called as the court's witness; that the court's failure to impose sanctions for defendant's abuse of discovery procedures was prejudicial; that the court erred in permitting a certain witness to

testify; that the court erred in allowing defense counsel to conduct improper examination of certain witnesses; and that defense counsel made prejudicial remarks during closing argument.

■■ Plaintiff's first contention on appeal is that Wisconsin tort law was applied improperly in the instant case. She concedes that the substantive tort law of Wisconsin was applicable, but argues that the trial court erred in the use of a Wisconsin special vedict. Under this heading, she also argues that the special verdict form used was improper because it did not permit the jury to consider the issue of defendant's negligence or his knowledge of the defect, and that the court erred in not applying the doctrine of *res ipsa loquitur.*

Wisconsin law provides for the doctrine of comparative negligence rather than contributory negligence. That doctrine necessitates various findings on issues of fact and requires provisions for the possible finding of relative percentages of negligence. To accomplish that purpose, Wisconsin statute provided for special verdicts. The statute, 270.27, provides in part as follows:

> "The court may, and when requested by either party, before the introduction of any testimony on his behalf, shall direct the jury to find a special verdict. Such verdict shall be prepared by the court in the form of written questions, relating only to material issues of fact and admitting direct answer, to which the jury shall make answer in writing. * * *"

In *Millsap v. Central Wisconsin Motor Trans. Co.,* 41 Ill.App.2d 1, 189 N.E.2d 793, under circumstances similar to the instant case, the court not only authorized the use of special verdicts, but held that the use of a general verdict constituted reversible error. At p. 20, the court stated as follows:

> "* * * the proper use of the Wisconsin interrogatory process is so intimately tied to the correct application of the comparative negligence doctrine as to constitute an integral part of the substance of that doctrine. To hold otherwise, and to permit a reading of the Wisconsin statute to the jury, accompanied by imprecise instructions, would have the practical effect of emasculating the Wisconsin statute which we seek to apply. More than mere procedure is involved * * *"

Consequently, we hold that the use of special verdicts is a substantive part of Wisconsin tort law, and that in the case at bar the trial court did not err in its use. The *Millsap* holding is also dispositive of plaintiff's claim that use of special verdicts violates public policy in Illinois. See also Section 65 of the Civil Practice Act.

■■ Plaintiff further argues that the special verdict form used was im-

proper because it did not permit the jury to consider the issue of defendant's negligence. An examination of the verdict does not support that contention. The special verdict submitted to the jury recited in part as follows:

"1. At or immediately prior to the time of the accident in question, did the lower control arm give way so as to cause defendant's car to go out of control and prevent defendant, EDMUND WARD, from reasonably operating and controlling it at the time?

2. If, but only if, you answer question No. 1 'Yes,' then answer this question:

Was such a defective condition, as found by you, the sole proximate cause of the accident in question?

3. If you answer question 1 and 2 'Yes,' then do not answer this question:

If, but only if, you answer question 1 or 2 'No' then answer this question:

At or immediately prior to the time of the accident was the defendant, EDMUND WARD, negligent in any of the following respects:
   a. As to lookout?
   b. As to speed?
   c. As to management and control?
   d. Voluntarily indulged in intoxicants to the extent that it had the effect of appreciably lessening or impairing his ability to exercise ordinary care in the operation of his car.

4. If you answer 'Yes,' to any subdivision of question 3 then answer this question:

Was such negligence on the part of defendant, EDMUND WARD, the proximate cause of plaintiff's injury?  *  *  *"

It is clear that the special verdict submitted to the jury thoroughly presented the issue of defendant's negligence.

Plaintiff also maintains that the special verdict was improper because it asked only whether the defective part of the vehicle was the sole cause of the accident and failed to require the jury to determine whether defendant knew of the defect prior to the occurrence. However, in *Gerstein v. C. F. Adams Co.,* 169 Wis. 504, 173 N.W. 209, the Wisconsin court held that facts which are undisputed need not be submitted to the jury in a special verdict interrogatory. In the instant case, defendant's lack of knowledge of any defect prior to the accident was undisputed. Defendant testified that upon purchase of the car he had it inspected and repaired, and that thereafter he had no problem with the car. There was no contrary evidence, and there was no impropriety in the form of

the special verdict. In this regard, we also observe that, prior to trial, plaintiff withdrew the charge that defendant had knowledge of the defect.

Plaintiff further contends that the court erroneously refused to apply the doctrine of *res ipsa loquitur*, although required to do so by Wisconsin law. However, the case was submitted to the jury on this doctrine, and indeed, the following instruction tendered by plaintiff was given to the jury:

> "If you find that defendant Edmund Ward had exclusive control of the automobile involved in this accident and if you further find that the accident claimed is of a type or kind that ordinarily would not have occurred had the defendant exercised ordinary care, then you may infer from the accident itself and the surrounding circumstances that there was negligence on the part of the defendant unless defendant has offered you an explanation of the accident which is satisfactory to you."

Moreover, under Wisconsin law, where, as in the case at bar, a *prima facie* case of negligence is established, the doctrine of *res ipsa loquitur* is not applicable. (*Brunner v. Van Hoof*, 4 Wis.2d 459, 90 N.W.2d 551; *Gay v. Milwaukee E. R. & L. Co.*, 138 Wis. 348, 120 N.W. 283.) Despite that principle, plaintiff was permitted to submit the case to the jury under both theories, *res ipsa loquitur* and specific negligence. She cannot now complain.

■■ The holding of our Supreme Court in *Marchlik v. Coronet Insurance Co.*, 40 Ill.2d 327, 239 N.E.2d 799, is dispositive of plaintiff's next contention on appeal that the court erroneously dismissed plaintiff's direct action against defendant's insurance carrier. In *Marchlik*, the court ruled that Illinois public policy precluded a direct action against a defendant's insurance carrier in a personal injury action such as the instant case. See also Section 25(2) of the Civil Practice Act.

■■■ Plaintiff next contends that the trial court's conduct in allowing defendant to present his affirmative defense that the accident was unavoidable by means of the defective A-frame was improper because of defendant's failure to expressly plead it prior to trial. Without making any determination as to whether the defense was in fact affirmative, we find that the trial court did not err in permitting defendant to present his defense. We also hold that plaintiff was not surprised by the presentation of that defense. We note initially that during trial the plaintiff made no objection that the testimony concerning the defective A-frame was beyond the scope of the issues, and consequently waived any objection. Additionally, the record reveals that prior to trial plaintiff filed affidavits that the defective A-frame was defendant's sole defense to the cause of

action. On the basis of these affidavits, the motion judge permitted plaintiff to take the depositions of certain defense witnesses. During these depositions, the witnesses testified concerning the defective A-frame. In view of these proceedings, plaintiff was not prejudiced by the trial testimony as to the cause of the accident.

■■ We hold that the trial court correctly permitted defendant to file an amended answer subsequent to judgment. When at a post-trial motion plaintiff for the first time argued that defendant had not filed an affirmative defense, the trial judge indicated that he did not believe it necessary, but under the authority of Section 46(3) of the Civil Practice Act permitted defendant to file an amended answer that a broken A-frame was the cause of the accident. This action was proper.

■■ Plaintiff's next contention on appeal is that the court committed reversible error by permitting Gordon Myrah to be called as a court's witness. As we have already observed, an examination of the record reveals that plaintiff's counsel expressly agreed to the court's suggestion that Myrah be called as a court's witness. Plaintiff cannot now complain.

Plaintiff's next contention on appeal is that the court's failure to impose sanctions for defendant's abuse of discovery procedure was prejudicial. She maintains that defendant's answers to an interrogatory misstated the facts and caused plaintiff to be caught by surprise by the defense proffered at trial. Plaintiff also claims that prior to trial defendant concealed the existence of the defective A-frame. The record does not support these contentions.

Some three years prior to trial, defendant, in response to an interrogatory, stated that the car defect claimed was a locked steering wheel, that the occupants of the car had knowledge of the defect, and that defendant did not know the whereabouts of the defective part. Subsequent to those answers, but nearly two years prior to trial, discovery and evidentiary depositions were taken of Grosshans at his salvage yard in Baraboo with both counsel present. Photographs of the A-frame were inspected and plaintiff's counsel had the opportunity to inspect the car. He stated in a later affidavit that he did not inspect the car because he was told that defendant's counsel had bought the car and he assumed that any part could be produced for inspection by an expert. Grosshans testified as to the functions of the A-frame and he also testified that the photographs indicated that the A-frame was bent and broken. At the deposition plaintiff's counsel attempted to establish that Grosshans caused the damage to the A-frame after the accident. The depositions of Buss and Myrah were also taken prior to trial, and both of them testified concerning the defective A-frame. Hoffman's deposition was scheduled, but he could not be located.

Two months prior to trial, before Judge Nicholas Bua, plaintiff's, counsel charged that defendant had removed the A-frame from the car and was claiming that the A-frame was lost. Plaintiff thus sought a protective order prohibiting defendant from any use of the claimed lost part at trial. Defendant's counsel replied that it was the steering column which had been removed and lost, but that the steering column was not the defective part. Defense counsel also stated that it was the A-frame which was defective, and that as far as defendant knew, the A-frame was still on the car in Baraboo. A month later, plaintiff's counsel informed the motion judge that his experts had looked at the car in Baraboo, but that certain parts were missing. Three days prior to trial, Myrah examined the car in Baraboo, found the A-frame still on the car and brought it to the trial.

In our view, defendant's answers to the interrogatory were neither misleading nor dishonest. However, even if they could be so characterized, plaintiff became fully aware years prior to trial that defendant relied on the defective A-frame as his defense to the cause of action. It is just as clear that the A-frame was not concealed or kept from plaintiff. Neither the trial judge nor the motion judge abused their discretion in refusing to impose sanctions, and plaintiff was afforded adequate discovery.

■■ Plaintiff's next contention on appeal is that the trial court erred in permitting the witness Raymond Fales to testify. She argues that the defendant had not disclosed the name of Fales as a witness in response to an interrogatory.

At a discovery conference held a few months prior to trial at the direction of the motion judge, defendant disclosed that he expected Buss, Myrah and Hoffman to testify as expert witnesses. Depositions were scheduled for the three witnesses; the depositions of Buss and Myrah were taken, but Hoffman could not be located. Thereafter, shortly before trial, to replace Hoffman as a witness, defendant engaged Fales, an automotive engineer, but did not inform plaintiff. We first observe that the discovery order which was prepared by plaintiff specifically provided that there was no continuing duty on the parties to provide names of additional witnesses to the opponent after the discovery conference. More importantly, when Fales was called as a witness, the trial judge permitted the plaintiff to interview the witness. Subsequently, the court, in the presence of both counsel, conducted a preliminary examination of Fales. The court, after recessing the trial, again permitted plaintiff to conduct a lengthy interview of Fales. We do not believe that the judge abused his discretion in permitting Fales to testify. See *Ferraro v. Augustine*, 45 Ill.App.2d 295, 196 N.E.2d 16.

We find no merit in plaintiff's next contention that, in testifying, Fales went beyond his field of expertise and testified improperly concerning metallurgy. On direct examination, Fales confined himself to giving opinions based on principles of automotive engineering. It was only on cross-examination that plaintiff examined him about the metallurgic aspects of the broken A-frame.

■■ Defendant further maintains that the trial court erred in permitting Fales to invade the province of the jury in the manner he was interrogated by defense counsel. She argues that, in answering the hypothetical question as to the cause of the accident, Fales was asked whether the broken A-frame "did cause" the accident, rather than whether it "could cause" the accident. In *Clifford-Jacobs Forging Co. v. Industrial Commission*, 19 Ill.2d 236, 166 N.E.2d 582, the court said at p. 243:

"So long as the witness is not called upon to decide any controverted fact, but is asked to assume the truth of the facts testified to, he may give his opinion thereon in any form  *  *  *. Pronouncements of this court to the contrary are hereby overruled  *  *  *. The form of the question or the form of the answer, when in terms of 'what did' or 'what might' have caused the injury and death is immaterial."

■■■ Plaintiff's final contention is that defendant counsel made an improper remark to the jury during closing argument in that he commented that Mr. Packard, plaintiff's expert witness, was not present at trial to rebut defendant's expert witnesses. She maintains that the remark was improper because the record did not disclose that she had employed Packard. However, one of plaintiff's witnesses had mentioned that he was hired by Packard Engineering to conduct certain tests, and the reference to Packard's absence to the jury was not improper. (See *Santiemmo v. Days Transfer*, 9 Ill.App.2d 487, 133 N.E.2d 539.) Moreover, even if the comment had no basis in the record, we would not consider it of sufficient magnitude to require reversal.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

McGLOON, P. J., and DEMPSEY, J., concur.